**NOT RECOMMENDED FOR FULL-TEXT PUBLICATON**
File Name: 14a0279n.06

No. 13-3993

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Apr 15, 2014
DEBORAH S. HUNT, Clerk

KULBIR SINGH,                          )
                                       )
      **Petitioner,**                   )       ON PETITION FOR REVIEW OF
                                       )       AN ORDER OF THE BOARD OF
v.                                     )       IMMIGRATION APPEALS
                                       )
ERIC H. HOLDER, JR., Attorney General, )
                                       )       **OPINION**
      **Respondent.**                   )
                                       )

Before: MOORE and COLE, Circuit Judges; DRAIN, District Judge.[*]

**KAREN NELSON MOORE, Circuit Judge.** Kulbir Singh is a twenty-five-year-old Sikh from the Punjab province of India. At age twelve, like his father and grandfather before him, Singh joined the Akali Dal Party ("ADP"). Due to his activities on behalf of ADP, the Indian police allegedly arrested, detained, beat, and threatened Singh. He fled India and eventually entered the United States without proper documentation. The United States Border Patrol caught him, and the Department of Homeland Security charged Singh with removability. In front of the Immigration Judge ("IJ"), Singh made claims for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). The IJ found him not credible due to inaccuracies and inconsistencies in his testimony and submissions, and as a result, she denied his claims. The BIA affirmed. Because Singh has not demonstrated that the IJ's and BIA's decisions are not supported by substantial evidence, we must **DENY** his petition for review.

---

[*]The Honorable Gershwin A. Drain, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I. FACTS & PROCEDURAL HISTORY

ADP is a political party in India, whose members are predominantly Sikh and have, at times, been in conflict with the national government. Once Singh started with ADP in 2000, he began speaking on the party's behalf and recruiting new members. Singh continued his political activities for years, apparently without incident, until November 2005. At that time, while Singh was attending a rally, he claims that the police arrested him and approximately ten other party members. *See* Administrative Record ("A.R.") at 118–19 (May 4, 2011 Hr'g Tr. at 40:6–41:4). In effecting the arrest, the police allegedly "beat[] [Singh] two to three times with [their] baton[s]." *Id.* at 119 (May 4, 2011 Hr'g Tr. at 41:1). The police then, according to Singh, held him for about one month, during which time they withheld food and water, deprived him of sleep, engaged in "mental[] tortur[e]," and beat him with batons and fists. *Id.* at 119–20 (May 4, 2011 Hr'g Tr. at 41:18–42:22). When the police released Singh a month later, they demanded that Singh leave ADP.

Singh did not comply with this order. Rather, Singh continued to associate with ADP after his release, and on April 13, 2006, the police again arrested Singh at a rally. This time they held Singh for fifteen days, beating him severely enough to loosen his teeth and to require hospitalization upon his release. *See id.* at 122–23 (May 4, 2011 Hr'g Tr. at 44:15–45:18). When the police released him from this second detention, Singh claims that they threatened to kill him if he continued his association with ADP. *Id.* at 123 (May 4, 2011 Hr'g Tr. at 45:13–15).

Singh judged these threats to be credible, and after healing over several months, he fled to his uncle's home in another town. Singh stayed with his uncle for a few months, and then he traveled to Mumbai. At that point, his family paid a man named Carlos to smuggle Singh into the United States. Singh left Mumbai for Uruguay and then traveled through Brazil, Bolivia, Guatemala, and Mexico, before entering the United States on February 16, 2008. Three days later, immigration authorities caught Singh near Alice, Texas.

On February 20, 2008, a Border Patrol Agent interviewed Singh. When asked why he had entered the United States without documentation, Singh apparently told the agent that he came in search of employment and "to remain in Austin, TX forever." *Id.* at 393 (Credible Fear Interview at 4). In his subsequent credible fear interview with an asylum officer,[1] however, Singh stated that he fled India due to past persecution, and he requested asylum. *Id.* at 391 (Credible Fear Interview at 2). In particular, Singh claimed that he fled to the United States to escape abuse at the hands of the government due to his political beliefs. *See id.* Singh attempted to explain his initial silence regarding prior persecution by stating that he gave purely economic reasons to the Border Patrol Agent "because [he] was afraid of the [Border Patrol Agent,] that he would beat again." *Id.* at 393 (Credible Fear Interview at 4). In the credible fear interview, he also said that his father had been arrested once before in India for advocacy on behalf of ADP and that Singh's second stint in jail lasted twenty days. *See id* at 391–92 (Credible Fear Interview at 2–3). On the basis of this second interview, the asylum officer found that "[t]here [wa]s a significant possibility, taking into account the credibility of [Singh's] statements made in

---

[1]The government conducted the credible fear interview on March 20, 2008 with Singh in Punjabi, his native language.

support of his claim and such facts as are known to the officer, that [Singh] could establish eligibility for asylum . . . based on his political opinion." *Id.* at 396 (Credible Fear Interview at 7).

Nevertheless, the Immigration and Naturalization Service ("INS") charged Singh with removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I). A.R. at 383 (Notice to Appear). Singh conceded this charge, *see id.* at 78 (Sept. 18, 2008 Hr'g Tr. at 2:3–4), and he filed for asylum, withholding of removal, and relief under the CAT on the basis of India's reactions to his religious beliefs and political opinions, *see id.* at 347 (I-589 Form at 5). Singh acquired and submitted various affidavits and reports detailing his experiences as an ADP member in India and those of ADP members generally. The government opposed Singh's asylum claim, and on May 4, 2011, Immigration Judge Holt held a lengthy hearing to determine whether Singh could carry his burden of proving a well-founded fear of continuing persecution.

At the hearing, Singh testified about his and his family's experiences in India and his flight to the United States. The problem was that Singh's statements, both in his testimony and in his written submissions, contradicted each other. The government focused upon these inconsistencies during cross-examination and argued that Singh's testimony was not credible. For instance, the government pointed out that Singh claimed that the police held him for twenty days after his second arrest when his hospital records show him being admitted no more than fifteen days after the date on which he claimed to have been arrested. *See id.* at 155 (May 4, 2011 Hr'g Tr. at 77:4–23). Singh also stated that his father was arrested only once, but the affidavits from his village indicate that his father was arrested a second time. *See id.* at 143

(May 4, 2011 Hr'g Tr. at 65:4–10).  Furthermore, the timeline of his actions between his second arrest in India and entry into the United States had significant gaps.  *See id.* at 161–62 (May 4, 2011 Hr'g Tr. at 83:2–84:23).  And most importantly, at least to the government, Singh claimed to have been beaten by the Border Patrol Agent and then admitted that his allegation was not true.  *See id.* at 135 (May 4, 2011 Hr'g Tr. at 57:2–23).  When confronted with these inconsistencies, Singh stated at one point that he stuck to his initial story so as to "not create a controversy."  *Id.* at 155 (May 4, 2011 Hr'g Tr. at 77:17).  His attorney suggested that his misstatements were due to a language barrier and misunderstandings.  *See, e.g.*, *id.* at 180 (May 4, 2011 Hr'g Tr. at 102:21–25).

After considering Singh's testimony and his other submissions, the IJ reached several conclusions.  First, the IJ deemed Singh to be not credible based on his false testimony regarding the Border Patrol Agent, his faulty timeline, and his inconsistent statements regarding his father's arrests and his own detention after the second arrest in India.  *See id.* at 69–71 (IJ Op. at 13–15).  Second, the IJ determined that Singh had failed to carry his burden of proving that he had a well-founded fear of persecution if returned to India.  *See id.* at 71–74 (IJ Op. at 15–18).  In particular, the IJ noted that recent reports stated that India's treatment of Sikhs has improved since the 1980s and that ADP members are generally not harassed unless they advocate violence.  *Id.* at 73 (IJ Op. at 17).  Thus, the IJ denied Singh's applications for asylum, withholding of removal, and relief under the CAT.  The Board of Immigration Appeals ("BIA") upheld the IJ's determination, and Singh now petitions this court for review.

## II.  STANDARD OF REVIEW

Under 8 U.S.C. § 1252, we have jurisdiction to review the decision of the BIA upholding the IJ's denial of asylum, withholding of removal, and relief under the CAT.  *See Singh v. Ashcroft*, 398 F.3d 396, 400 (6th Cir. 2005).  "Where the BIA reviews the [IJ's] decision and issues a separate option, rather than summarily affirming the [IJ's] decision, we review the BIA's decision as the final agency determination."  *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (citing *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007)).  "Where the BIA adopts the IJ's reasoning, [we] review[] the IJ's decision directly to determine whether the decision of the BIA should be upheld on appeal."  *Gilaj v. Gonzales*, 408 F.3d 275, 282–83 (6th Cir. 2005) (citing *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003)).

We review the IJ's and the BIA's factual findings, including whether an applicant is credible, under the substantial-evidence standard.  *El-Moussa v. Holder*, 569 F.3d 250, 255 (6th Cir. 2009).  According to this deferential standard, we must uphold the IJ's and the BIA's findings "unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).  We review de novo the IJ's and the BIA's legal conclusions.  *Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008).

## III.  ANALYSIS

Before this court, Singh advances two main arguments.  First, he asserts that the IJ's and the BIA's credibility determination is not supported by substantial evidence.  Second, Singh claims that he has met his burden for establishing asylum, withholding of removal, and obtaining

relief under the CAT. We disagree. Because the record, considered as a whole, supports the IJ's

and the BIA's findings, we must affirm their denial of relief.

## A. Credibility

Credibility determinations regarding applications for relief filed on or after May 11, 2005

are governed by the REAL ID Act of 2005, Pub. L. No. 109–13, 119 Stat. 302. *El-Moussa*, 569

F.3d at 256. The Act states in relevant part:

> Considering the totality of the circumstances, and all relevant factors, the
> immigration judge may base a credibility determination on the demeanor, candor,
> or responsiveness of the applicant or witness, . . . the consistency between the
> applicant's or witness's written and oral statements (whenever made and whether
> or not under oath, and considering the circumstances under which the statements
> were made), the internal consistency of each such statement, the consistency of
> such statements with other evidence of record . . . , and any inaccuracies or
> falsehoods in such statements, without regard to whether an inconsistency,
> inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other
> relevant factor.

8 U.S.C. § 1229a(c)(4)(C). This is a difficult standard for Singh to overcome, and on this record,

he cannot do it.

The BIA relied upon the IJ's reasoning in holding that Singh was not credible, and so we

turn to the IJ's decision to evaluate whether this decision is supported by substantial evidence.

In her opinion, the IJ cited several inaccuracies and inconsistencies in Singh's testimony and

submissions that caused her to find him not credible. One, Singh admitted that his claim of

being beaten by the Border Patrol Agent was not true and that he created this story to explain his

initial economics-based reason for entering the United States. Two, Singh's statements and

submissions, regarding the number of times that Indian police arrested his father, the condition of

his passport, and the amount of time that Singh spent in each country prior to arriving in Texas,

were inconsistent. Three, Singh claimed to have been held for twenty days in connection with his second arrest when his hospital records indicate that he could have been held only for fifteen days. Moreover, when questioned about these discrepancies, Singh stated that he realized that there were some inconsistencies but stuck with his original stories to avoid controversy. *See* A.R. at 70 (IJ Op. at 14). The BIA recited each of these problems and held that the IJ's credibility determination was not clearly erroneous. *Id.* at 5–6 (BIA Op. at 3–4).

Under the REAL ID Act, these inaccuracies and inconsistencies provide enough support for the IJ's credibility determination, requiring us to affirm her decision. Singh, in his briefing before this court, unsuccessfully attempts to explain away these inconsistencies. In particular, Singh argues that during his credible fear interview, he was referring to beatings in India and not alleging that the Border Patrol Agent beat him. *See* Pet'r Br. at 7. The record contradicts this claim, however, because the transcript shows that Singh stated, "I was afraid of the Immigration Officer[,] that he would beat [me] again." A.R. at 393 (Credible Fear Interview at 4). The use of the pronoun "he" in this final phrase, referring back to the Immigration Officer, undercuts this explanation. Moreover, the asylum officer conducted the credible fear interview in Punjabi, and while there can be errors in translation or transcription, Singh does not make that argument. Accordingly, we cannot say that the IJ erred in concluding that these statements impugned Singh's credibility.

Singh also argues that his statements regarding his father's arrest history can be reconciled or explained away and, therefore, that they should not be held against him. There are several problems with these arguments, too. One, the arrest-history statement cannot be

reconciled. When asked in the credible fear interview if "anything else happen[ed] to [his father] after his release" in 1999, Singh volunteered: "No, it was the only time that he was arrested." *Id.* at 392 (Credible Fear Interview at 3). The affidavits that Singh submitted, however, indicate that Singh's father was arrested again in 2006. *See, e.g.*, *id.* at 252–53 (Kaur Aff. at 2–3). Whether Singh thought this arrest was a mistake or not, the fact that the second arrest happened contradicts Singh's earlier statement. Even if it has little relevance to the proceedings, under the REAL ID Act, the IJ can use a contradiction to determine a petitioner is not credible. Two, the burden is on Singh to show that any reasonable factfinder would find him credible when considering the record as a whole. *See Shkabari v. Gonzales*, 427 F.3d 324, 329 (6th Cir. 2005). Even if Singh's statements about his father could be reconciled, the fact remains that Singh intentionally made inaccurate statements regarding the Border Patrol Agent. Under the REAL ID Act, that fact alone would generally support an adverse credibility determination, and it does so here.

While there is substantial evidence in the record to support the IJ's finding that Singh is not credible, we are troubled by the IJ's discussion of Singh's account of his own second arrest and detention. In many removability cases, IJs are asked to determine whether an alien was abused in his home country on the basis of his testimony alone. This is a difficult task, one which requires an IJ to pay close attention to the details of an alien's story, and when the small details do not add up, an IJ can begin to doubt, perhaps rightly, the alien's larger claims. That is not this case. Here, on this issue, Singh originally claimed that he was held for twenty days, during which the Indian police beat him with fists and wooden batons until his teeth were

loosened and his lips were swollen. When the police released him, Singh received medical attention at the hospital and has a medical record to prove that he received care. The problem is that the medical record also shows that he could have been held by the police for only fifteen days. Singh's late acknowledgement of the discrepancy between his initial testimony and the medical form is troubling, as are his reasons for being silent. But the fact that someone was held and beaten for only fifteen days instead of twenty, when in all likelihood it felt like two hundred days, is likely not enough—by itself—to support an adverse credibility determination, even under the REAL ID Act's unforgiving standard. *See Slyusar v. Holder*, 740 F.3d 1068, 1074–75 (6th Cir. 2014). Because there are other, more significant discrepancies and inaccuracies in the record, however, we need not answer this question definitively. Given the record as a whole, we affirm the IJ's adverse credibility determination.

**B. Asylum, Withholding of Removal, and the Convention Against Torture**

Singh also contends that the IJ and the BIA erred in determining that he did not qualify for asylum, for withholding of removal, or for other relief in accordance with the CAT. As with the adverse credibility finding, we review factual determinations under the substantial-evidence standard, meaning that Singh must demonstrate "'that the evidence not only supports a contrary conclusion, but *compels* it'" for us to reverse the IJ's and BIA's decisions. *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010) (quoting *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004)). On the credible evidence in the record, Singh cannot make this showing.

### 1. Asylum & Withholding of Removal

An alien seeking asylum must demonstrate that he is a refugee. *Id.* A refugee is a person "who is unable or unwilling to return to . . . [his] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." 8 U.S.C. § 1101(a)(42). An alien also can stave off removal by demonstrating that his "life or freedom would be threatened in [the] country [to which he would be removed] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). This second avenue forces the alien to bear a "'more stringent burden'" because the alien must establish a "'clear probability that [he] will be subject to persecution if forced to return to [his home country].'" *Liti v. Gonzales*, 411 F.3d 631, 640–41 (6th Cir. 2005) (quoting *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004)). In both cases, the alien bears the burden of proving that he meets the various requirements.

Here, Singh claims that he is unable to return to India because he fears that the Indian government will continue to jail and beat him—or worse—if he continues to express his political opinions. The IJ found that Singh failed to carry his burden of proving refugee status because he failed to submit credible evidence demonstrating a well-founded fear of persecution. A.R. at 73 (IJ Op. at 17). Likewise, the IJ denied Singh's withholding-of-removal claim. As discussed above, the IJ found Singh's testimony not credible, and the IJ gave the affidavits that Singh submitted "minimal weight" because they were "identical statements" and did not "contain identifying documents." *Id.* at 72 (IJ Op. at 16). Moreover, the other documents and reports

discussing India's treatment of Sikhs, the IJ found, showed only that Sikhs had been persecuted decades ago and that ADP members are harassed only if they advocate violence or secession. *Id.* at 73 (IJ Op. at 17). Accordingly, Singh had not shown a well-founded fear, let alone a clear probability, of persecution if he were returned to India. The BIA agreed and affirmed the IJ's decision. *Id.* at 6 (BIA Op. at 4).

On appeal, Singh offers only the conclusory statement that: "[Singh] has met his burden. He has established [he] is eligible for asylum on the basis of his membership in a particular social group."[2] Pet'r Br. at 9. He does not dispute the IJ's or BIA's finding that his submissions were inadequate, and thus, he has failed to show that the evidence compels any reasonable factfinder to conclude that he is a refugee. *Shkabari*, 427 F.3d at 327 n.1. Singh similarly offers only perfunctory arguments with regard to his withholding-of-removal claim, and thus, we deny his petition for review on these matters.

### 2. Relief Under the Convention Against Torture

Singh also petitions for review of the IJ's and the BIA's denials of his claim for withholding of removal based upon the CAT. "In order to establish entitlement to such relief, an alien must prove 'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Singh*, 398 F.3d at 404 (quoting 8 C.F.R. § 208.16(c)(2)). Torture is

---

[2]The entirety of the remainder of Petitioner's brief on his eligibility for asylum is as follows: "Because Umaria-Ramos's application for based in his membership in Alaki Dal party [sic] and being persecuted by the government of India for his political activates [sic] and membership in his political party." Pet'r Br. at 9–10. We assume that the inclusion of "Umaria-Ramos" is a typographical error and that counsel meant to say that Singh's claim for asylum is based on the Indian government's persecution of Singh for belonging to the Akali Dal Party.

any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1). When assessing the risk that the alien will be tortured if returned to his home country, the IJ and the BIA must consider any past instances of torture, reports of torture in the country, and any evidence suggesting that the alien will not be tortured if removed from the United States. *Singh*, 398 F.3d at 405.

In this case, the IJ concluded that Singh "ha[d] not established any of the elements for a claim under the [CAT]" and refused to withhold removal. A.R. at 74 (IJ Op. at 18). The BIA summarily affirmed this decision without specific discussion. Singh, on appeal, claims that these decisions were in error because the IJ and the BIA failed to "discuss why torture by the police is not an indication [that] torture is being committed with the acquiescen[ce] of the government" and "to mention or discuss the relevant country conditions outlined in the [reports on India]." Pet'r Br. at 12. Both claims lack merit.

First, the IJ specifically recounted the findings of the U.S. Department of State Reports and a report from the Immigration and Refugee Board of Canada, which both recognized that Sikhs had suffered abuses in the past but no longer faced ill treatment. A.R. at 73 (IJ Op. at 17). Those reports do indicate that Sikh separatists or those suspected of terrorist activities are routinely monitored and even detained, but Singh claimed that he did not share those views or advocate such actions. *See id.*; *see also id.* at 112 (May 4, 2011 Hr'g Tr. at 34:16–18).

Additionally, the IJ noted that Manmohan Singh, a Sikh, is the current prime minister of India. A.R. at 73 (IJ Op. at 17). Thus, we do not agree that the IJ failed to mention the relevant country conditions. To Singh's second point, we share the government's view that the IJ rejected Singh's CAT-related claim because he failed to present credible evidence that showed that he would likely be tortured if returned to India. *See* A.R. at 74 (IJ Op. at 18); Resp't Br. at 33 n.8. On the record before us, given the prior adverse credibility determination, we must hold that Singh has failed to demonstrate that the IJ's decision is not supported by substantial evidence. Thus, we deny his petition for review.

## IV. CONCLUSION

For the foregoing reasons, we **DENY** Singh's petition for review.