NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0698n.06

No. 13-3547

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Sep 08, 2014

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| YING CHEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| V. | ) | ON APPEAL FROM THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| ERIC HOLDER, JR., Attorney General | ) | |
| of the United States, | ) | |
| | ) | OPINION |
| Respondent. | ) | |
| | ) | |

Before: ROGERS and GRIFFIN, Circuit Judges; VAN TATENHOVE, District Judge.*

VAN TATENHOVE, District Judge.

Petitioner Ying Chen is a citizen of China who came to the United States in November,

2008. A few months later, Chen filed an application for asylum, withholding of removal, and

protection under the Convention Against Torture (CAT). Chen now petitions this Court for

review of the decision of the Board of Immigration Appeals (BIA or Board), which affirmed the

immigration judge's denial of her application. Chen argues that both the immigration judge and

the BIA erred in finding that her testimony lacked credibility. Chen further contends that she

met her burden of proof for establishing her eligibility for asylum, or for protection under the

CAT, because she sufficiently demonstrated that she had suffered past persecution in China on

account of her involvement with Falun Gong. However, because the Board's finding of adverse

---

* The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky,
sitting by designation.

credibility was supported by substantial evidence, we must DENY REVIEW.

## I

Twenty-seven-year-old Petitioner Ying Chen was born and raised in the Fujian Province of China. Chen left China in the fall of 2008 to come to the United States. In December, 2008, the Department of Homeland Security served Chen with a Notice to Appear, alleging that she attempted to enter the United States without valid entry documents during the previous month. Chen successfully moved to change venue to the immigration court in Louisville, Kentucky, because her sponsor, who was also her aunt, lived in Kentucky. In May, 2009, Chen applied for political asylum, withholding of removal, and protection under the Convention Against Torture (CAT). In her application, Chen claims that she left China on October 30, 2008, with the help of smugglers, and came to the United States seeking asylum because she had been "persecuted by the Chinese government" due to her involvement with Falun Gong.[1] Chen also claims that if she returns to China she will be put in jail, tortured, and fined for leaving.

Immigration Judge Rebecca Holt held a hearing on June 14, 2011, to decide the merits of Chen's claims. Chen's application alleges that her mother had begun practicing Falun Gong in 2007 in order to improve her health, and that her mother eventually taught Chen's father to practice Falun Gong as well. Chen testified that she herself never practiced Falun Gong, nor does she currently practice it in the United States. At the hearing, Chen answered further questions about the sole incident discussed in her application for asylum. According to her testimony, Chen was at home with her parents on March 8, 2008, when she saw two police officers come to the door. Chen testified that her parents were practicing Falun Gong with one

---

[1]     Falun Gong is a "controversial Chinese spiritual movement" founded in 1992 by Li Hongzhi that draws from various Asian religions such as Buddhism, Taoism, and Confucianism and involves ritual exercise "to obtain mental and spiritual renewal." "Falun Gong," *Encyclopaedia Britannica, Encyclopaedia Britanica Online Academic Edition*, http://www.britannica.com/EBchecked/topic/724793/Falun-Gong (last visited Aug. 4, 2014). The Chinese government views the movement as a cult and has actively sought to suppress it in recent years. *Id.*

of her uncles and an aunt, and that she let them all escape out the back door before answering the front door. When Chen opened the door, the police informed her that they suspected that someone in her home had been practicing Falun Gong, and they proceeded to search the house. Upon finding a Falun Gong video tape in the VCR machine, the police asked Chen where it came from. Chen said she told them that she found it outside on the street, but the police did not believe her and took her to the police station, where she was interrogated. According to Chen, the police asked her questions about where the video came from, who organized Falun Gong activities, and who she knew that was associated with Falun Gong. Although Chen told them she did not know anything about Falun Gong and did not practice it, she claimed that the police did not believe her and detained her anyway.

Upon further questioning about her detention, Chen testified that during her interrogation at the police station, the police hit her and kicked her when she did not answer their questions. Chen claimed that she lost consciousness from the beating and that when she woke up, she found herself "in a very small room." After she woke up, the police interrogated her again. Chen alleged that she was detained at the police station for one week, during which the police interrogated her four times, and beat her at least three times. Upon cross-examination, Chen described her injuries from the alleged beatings as consisting of bruises and "soft tissue injuries" on her arms and neck, but conceded that she did not receive medical treatment.

Chen further testified that her family had to pay a fine of 10,000 RMB in order to obtain her release. Chen alleged that, as a condition of her release, she was required to report to the local police office once every week and to submit a list of all known Falun Gong associates within the next three months. Chen testified that the police told her that if she did not comply with their demands, they would arrest and imprison her. Chen claimed that after she was

-3-

released, she reported back to the police station on a weekly basis as required about ten times, but that as the three-month deadline approached, she went to live with an aunt in Fuzhou City in order to avoid the police because she had no intention of giving them the list of Falun Gong participants that would necessarily include her parents. Chen claimed that while she was staying with her aunt, she contacted her parents and discussed with them her fear of being arrested if she returned home. According to Chen, her parents told her that the police had come to their home to search for her several times.

Chen testified that she was able to use her own passport to leave China, and that on her way to the United States, she departed from the Hong Kong airport and stopped in Paris, France for a brief layover before arriving in Mexico. She claimed that she did not go to Thailand, although the government attorney pointed out that her passport contained a visa for Thailand. Chen's passport contains no entry stamps for France, Mexico, or any other country. No one other than Chen testified at the hearing before the immigration judge.

After the hearing, Judge Holt issued her decision, denying Chen's application for asylum, withholding of removal, and protection under the CAT. The immigration judge (IJ) rejected Chen's claims because she found that Chen's testimony was not credible and lacked corroboration. In particular, the IJ determined that Chen's testimony contains several inconsistencies and also lacks detail concerning the place where she was detained, the types of injuries she allegedly suffered, the circumstances of the alleged beatings, and the number of police officers who purportedly interrogated and beat her. The IJ further noted that Chen's testimony about leaving China and entering the United States did not explain why her passport lacked entry stamps for France or Mexico, nor how she was able to leave China while on the verge of being arrested by the Chinese police. Accordingly, the IJ concluded that Chen does not

carry her burden of establishing a well-founded fear of persecution upon returning to China, and that, even if Chen's testimony were credible, the alleged treatment does not rise to the level of past persecution.

The BIA affirmed the IJ's decision on the issues of asylum, withholding of removal, and withholding of removal under the CAT. In response to Chen's argument that the IJ erred in determining she was not credible, the Board found that the IJ's adverse credibility determination was adequately supported by specific, cogent reasons including lack of detail about Chen's interactions with the police, inconsistencies between Chen's testimony and the documentary evidence which Chen did not reconcile on appeal, and vagueness in her testimony about her passport that Chen did not sufficiently explain. The Board rejected Chen's argument that the IJ unreasonably required more detail about the alleged beatings because she lost consciousness during one beating, explaining that Chen did not claim to have been unconscious during the two additional alleged beatings, yet still did not provide sufficient detail about them. The Board also found that Chen did not establish her claims by presenting corroborative evidence independent of her own testimony, nor did she adequately explain why such corroborative evidence was not reasonably available. Finally, the Board determined that it was unnecessary to reach Chen's additional contentions because of its decision to affirm the IJ's adverse credibility determination. Chen now petitions this Court to review the Board's determination.

**II**

This Court has exclusive jurisdiction to review a final order of deportation or removal by the Board of Immigration Appeals pursuant to 8 U.S.C. § 1252(a)(1). The parties do not dispute that Chen exhausted her remedies by appealing the IJ's decision to the Board. The Board dismissed Chen's appeal on April 3, 2013, which became a final order of removal. The parties

also do not dispute that Chen's petition for review of that decision was timely and that venue is proper.

When the BIA adopts the IJ's reasoning and supplements the IJ's opinion, this court "directly reviews the decision of the IJ while considering the additional comment made by the BIA." *Zhao v. Holder*, 569 F.3d 238, 246-47 (6th Cir. 2009) (quoting *Mapouya v. Gonzales*, 487 F.3d 396, 405 (6th Cir. 2007)). We review legal conclusions de novo, *Zhao*, 569 F.3d at 246, but defer to reasonable agency interpretations of the INA. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999); *Patel v. Gonzalez*, 432 F.3d 685, 692 (6th Cir. 2005). Factual findings are reviewed for substantial evidence. *Zhao*, 569 F.3d at 246. Under the deferential substantial evidence standard, the IJ's findings of fact are conclusive "[u]nless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* at 247 (internal citation and quotation marks omitted); 8 U.S.C. § 1252(b)(4)(B). "Thus, the [Board's] determination should be upheld unless evidence not only supports a contrary conclusion but indeed *compels* it." *Id.* We may not reverse the agency's determination simply because we would have decided the matter differently. *Id.*

**A**

On appeal to this Court, Chen asserts that the BIA's and the IJ's adverse credibility finding is "clearly erroneous" because their conclusions about Chen's testimony are "contrary to the evidentiary record" and based on speculation and conjecture. Second, Chen claims that the BIA and the IJ erred by unreasonably expecting her to provide corroborating evidence. Finally, Chen contends that she has met her burden for establishing withholding of removal and protection under the CAT by demonstrating both past persecution and a well-founded fear of

future persecution upon her return to China. Because the BIA's and the IJ's findings are supported by substantial evidence, however, we must uphold the BIA's decision.

An alien seeking asylum has the burden of demonstrating that she is a "refugee" by showing that she is "unable or unwilling to return to" her country because she has suffered either past persecution or has "a well-founded fear of persecution" in the future, because of the applicant's "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42); *see also* 8 U.S.C. § 1158(b)(1)(B); *Singh v. Holder*, No. 13-3993, 2014 WL 1424502, at *6 (6th Cir. Apr. 15, 2014). To succeed, the applicant must demonstrate "a well-founded fear of persecution" upon return to her country of origin, which has "both a subjective and an objective component" – the alien must subjectively fear persecution upon return to her country, and she must also demonstrate that such fear is objectively reasonable. *Perkovic v. I.N.S.*, 33 F.3d 615, 620-21 (6th Cir. 1994) (citing *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987)); *see also Gilaj v. Gonzales*, 408 F.3d 275, 283-84 (6th Cir. 2005) (citing *Perkovic*, 33 F.3d at 620). The determination of whether the applicant qualifies for asylum is within the discretion of the Attorney General. 8 U.S.C. § 1158(b)(1)(A); *Cardoza-Fonseca*, 480 U.S. at 423. The applicant may meet her burden of proof through her own testimony without corroboration, but only if the trier of fact is satisfied that the applicant's testimony "is credible, is persuasive, and refers to specific facts" that sufficiently demonstrate her refugee status. 8 U.S.C. § 1158(b)(1)(B)(ii).

To establish a claim for withholding of removal, an alien must demonstrate that her "life or freedom would be threatened in the country directed for removal on account of his [or her] race, religion, nationality, membership in a particular social group, or political opinion." *Zhao*, 569 F.3d at 245 (citing *INS v. Stevic*, 467 U.S. 407 (1984)); 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R.

§ 1208.16(b). This standard to qualify for withholding of removal, however, "is even higher" than the standard for asylum, requiring the alien "to demonstrate a clear probability that she would more likely than not be subject to persecution" if she is forced to return to her country. *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009); *see also Liti v. Gonzales*, 411 F.3d 631, 640-41 (6th Cir. 2005) (quoting *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004)). If the applicant establishes past persecution on one of the five grounds enumerated above, then future persecution is presumed. 8 C.F.R. § 1208.16(b)(1)(i). If the applicant cannot establish past persecution, then she bears the burden of establishing that it is more likely than not that she would suffer a future threat to her life or freedom if returned to the proposed country of removal. 8 C.F.R. § 1208.16(b)(2).

## 1

Clearly, an applicant cannot meet the above standard if her testimony lacks credibility. Here, Chen primarily contends that the BIA and the IJ erred by determining that her testimony was not credible. When a final order of removal has been issued, "this court reviews factual findings, including credibility determinations, under a substantial evidence standard," which is highly deferential. *Abdallahi v. Holder*, 690 F.3d 467, 472 (6th Cir. 2012). Accordingly, this court will uphold BIA and IJ determinations of credibility as long as the determination "is supported by reasonable, substantial, and probative evidence." *Abdallahi*, 690 F.3d at 472 (citation omitted). Since the passage of the REAL ID Act of 2005, such credibility determinations are made by looking at the "totality of the circumstances," and "taking into account 'all relevant factors,'" including:

> the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements, . . . the internal consistency of each such statement, the consistency of such statements with other evidence of

record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, *without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.*

*El-Moussa*, 569 F.3d at 256 (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)) (emphasis in original). This same credibility standard applies to all three of Chen's claims – for asylum, withholding of removal, and for relief under the CAT. *Id*. at 256.[2]

Chen argues on appeal that the IJ's credibility determination should be overturned because it was based on factors that did not go to the heart of her claim.[3] Since the REAL ID Act was passed in 2005, however, an immigration judge may base his or her credibility findings on any inconsistency or inaccuracy, regardless of whether such inconsistencies or inaccuracies "go[] to the heart of the applicant's claim." *El-Moussa*, 569 F.3d at 256 (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)); *see also Masiko v. Holder*, No. 13-3801, 2014 WL 1424497, at *4 (6th Cir. Apr. 14, 2014) (rejecting petitioner's argument that the IJ's adverse credibility finding should be overturned for citing discrepancies in applicant's testimony that were not essential to his asylum claim because the REAL ID Act allows an adverse credibility finding to rest on any inconsistency regardless of whether it goes to the heart of an applicant's claim). The immigration judge should be given "substantial leeway" in determining credibility, and "[her] on-the-scene credibility determination, when affirmed by the Board, must be upheld if

---

[2]      "The REAL ID Act of 2005 governs credibility determinations concerning applications for asylum, withholding of removal, and protection under the CAT filed on or after May 11, 2005," and thus applies in this case. *Gonzales-Lopez v. Holder*, 518 F. App'x 370, 373 (6th Cir. 2013). Both the IJ and the BIA properly recognized this change in the law and correctly applied the applicable standard.

[3]      The law cited by Petitioner in support of this contention has been abrogated by the REAL ID Act of 2005, as explained above. The cases Petitioner cites dealt with asylum claims filed before May 11, 2005, and thus applied the earlier and now inapplicable standard concerning adverse credibility findings. *See, e.g., Chen v. Gonzales*, 447 F.3d 468, 472 (6th Cir. 2006) (applying the pre-REAL ID Act standard to testimony given in a 2001 hearing); *Shkabari v. Gonzales*, 427 F.3d 324, 329 (6th Cir. 2005) (applying the previous standard to an application filed before the REAL ID Act took effect).

substantial evidence supports it." *Masiko*, 2014 WL 1424497, at \*4 (citing *El-Moussa*, 569 F.3d at 255-56).

Here, the IJ initially found that Chen's testimony lacked credibility for several reasons. First, the IJ found that Chen's testimony lacked necessary detail concerning her arrest, detention, and alleged interrogation and torture. Second, the IJ expressed concern regarding inconsistencies in Chen's testimony about her journey from China to the United States, including the discrepancy between Chen's testimony concerning where she traveled and the lack of stamps in her passport to support that testimony. Due to such inconsistencies and lack of detail, the IJ found that Chen's testimony requires corroboration, but that Chen failed to provide any corroborating evidence to support her claims. The IJ also determined that Chen's reliance on Country Reports of general conditions concerning government treatment of Falun Gong practitioners is insufficient to corroborate Chen's claims concerning her alleged past persecution or fear of future persecution. Finally, Chen also failed to explain why such corroborating evidence was not readily available to substantiate her claim. The BIA subsequently determined that Chen also does not adequately explain the inconsistencies in her testimony or provide corroborative evidence on appeal, and that the lack of persuasive explanations to reconcile the discrepancies and lack of detail in her testimony provided an adequate basis for upholding the IJ's adverse credibility finding.

Before this Court, Chen first contends that basing an adverse credibility determination on the lack of stamps in her passport was clearly erroneous because Chen did not testify she had such stamps and because this issue does not go to "the heart" of her claim. However, when comparing Chen's testimony about leaving China to the record before us, clear discrepancies exist. Chen testifies that she traveled from Hong Kong to Paris, and then from Paris to Mexico,

yet there are no stamps in her passport reflecting travel into France or Mexico. Her passport also contains a tourist visa from Thailand, although she specifically denied going to Thailand. Additionally, despite Chen's claim that she left China because of fear of imminent arrest, her passport contains an exit stamp from China indicating her apparent ability to leave China without any difficulty. The IJ was troubled by this fact and noted that the Chinese authorities have an "extensive system for tracking criminal violators," which would seem to make it difficult for Chen to leave China under the circumstances alleged. Chen did not, and still does not, provide any satisfactory explanation as to this apparent discrepancy in her story. Contrary to Chen's assertion, such inconsistencies *are* relevant to her overall asylum claim, and her ability to leave China in particular would seem to diminish her claim concerning fear of future persecution.[4] Moreover, as explained above, the REAL ID Act specifically permits the IJ to base credibility determinations on inconsistencies regardless of whether or not they "go to the heart" of the applicant's claim. 8 U.S.C. § 1158(b)(1)(B)(iii); *see also Singh*, 2014 WL 1424502, at *5 ("Even if it has little relevance to the proceedings, under the REAL ID Act, the IJ can use a contradiction to determine a petitioner is not credible."). Thus, the finding of inconsistency by the IJ was not based purely on speculation or conjecture, but was in fact supported by the record.

Chen also contends that the IJ erred by determining that her testimony lacked detail about her detention and beatings. The IJ specifically found that although Chen claimed she was detained for a week, interrogated at least four times, and beaten at least three times, Chen did not provide any detail concerning the place where she was detained, how many police officers

---

[4] The transcript of the hearing before the immigration judge on June 14, 2011, reflects that Chen's counsel argued that Chen's fear of future persecution was largely based on her fear that "the moment she returns" to China, "the persecution will continue" because she failed to submit the list of Falun Gong practitioners, and that she will have to betray her parents by turning in that list or else face physical abuse or even death. This assertion indicates some inconsistency with Chen's apparent ease in being able to leave China, and in the still unanswered question as to why the police never interrogated, detained, or even suspected her parents or other relatives due to their own involvement with Falun Gong.

questioned or beat her, what specific types of injuries she received, or how she was beaten. The IJ determined that Chen's testimony on these matters was vague and thus not credible. Chen argues that it was unreasonable to expect her to provide more detail about the alleged beatings because she was beaten into unconsciousness. Chen also contends that she did provide sufficient detail by stating how long she was detained, mentioning some of the questions she was asked, explaining the conditions of her release, and stating how many times she was beaten. Chen argues that if the IJ wanted more detail, the IJ should have asked Chen at the hearing. However, as both the IJ and the BIA correctly noted, the burden of proof is entirely on Chen to provide sufficient detail demonstrating that her testimony is credible, and not on the IJ or on government counsel to solicit all necessary information. *See, e.g., Singh*, 2014 WL 1424502, at *5 (finding that the burden is on petitioner challenging credibility determination "to show that any reasonable factfinder would find him credible when considering the record as a whole"). In this case, Chen's allegations about her detention and beatings form the basis for her entire claim of past persecution and most of the reasons supporting her alleged fear of future persecution. It was therefore reasonable for the IJ to require more detail concerning this part of Chen's testimony. The transcript of the hearing reflects that only a few portions of approximately four pages discuss Chen's detention and three alleged beatings. Although it is a logical assumption that Chen likely could not provide details of any beating she received while she was unconscious, the BIA properly noted that Chen alleged that she was unconscious on only one of those occasions, yet still provided no detail about the other alleged beatings.

Moreover, even if this lack of detail does not support the IJ's ultimate finding, the IJ based her finding on other evidence as well, as discussed herein. For instance, the IJ was troubled by other aspects of Chen's story that seem implausible. As the Board pointed out,

although Chen's parents practiced Falun Gong for some time before March 8, 2008, the police apparently never questioned her parents or questioned Chen as to their whereabouts or activities. Chen testified that she has never practiced Falun Gong, yet she was the one interrogated, beaten, and detained; and she testified that her parents told her the police came to their home to search for Chen but never detained or questioned her parents about their own Falun Gong activities.

While Chen correctly notes that her testimony described how the police hit her with their fists and kicked her, and she generally described some of the questions they asked her, Chen's contention about the lack of detail is ultimately a disagreement with the IJ's conclusion as to how much detail is necessary. For an asylum applicant, "the mere failure . . . to include every detail of an asylum claim in the application itself should not be considered fatal to a petitioner's request for relief." *Kaba v. Mukasey*, 546 F.3d 741, 749 (6th Cir. 2008). Such omissions of detail in the application are generally "not definitive when they involve claims that are subsequently elucidated at the hearing." *Seo v. Holder*, 533 F. App'x 605, 611 (6th Cir. 2013). However, in Chen's case, her testimony before the IJ does not reveal much more detail than was included in her application, and the IJ thus found that her claims were not "subsequently elucidated." *Id.* Moreover, it is ultimately the immigration judge, and not Chen who must make the credibility decision, and thus decide how much detail is necessary. In doing so, the IJ did not base her adverse credibility determination solely on Chen's lack of detail about her alleged beatings, but rather on the totality of the considerations.

In a similar situation in *Seo v. Holder*, we upheld an IJ's adverse credibility determination even when two of the four inconsistencies upon which the IJ based that determination did not support a finding of adverse credibility. *Seo*, 533 F. App'x at 611-12. There, we reasoned that the other two inconsistencies supported the adverse credibility finding, and although they were

"relatively inconsequential" to the petitioner's asylum claim, they could still serve as a basis for an adverse credibility determination under the new standard established by the REAL ID Act of 2005. *Id.* Additionally, we determined that the very existence of two identified inconsistencies supporting the adverse credibility finding, though not vital to petitioner's claim, made it "difficult to argue that the evidence 'compels'" a finding of credibility, especially when combined with the IJ's determination of the petitioner's demeanor as a witness, which "is virtually impossible to assess from a written transcript." *Id.* at 612.

Similarly, the record as a whole in this case demonstrates that the BIA did not err in upholding the IJ's adverse credibility determination because that finding was supported by substantial evidence. *See, e.g., Gonzalez-Lopez v. Holder*, 518 F. App'x 370, 373 (6th Cir. 2005) (concluding that the IJ's adverse credibility finding was supported by substantial evidence when the record included significant inconsistencies that petitioner was unable to adequately explain); *Chagnaa v. Holder*, 430 F. App'x 508, 511-13 (6th Cir. 2011) (affirming BIA's adverse credibility determination even when omissions cited by the BIA were insufficient to find petitioners not credible because other noted inconsistencies *were* supported by specific reasons and substantial record evidence).

## 2

Chen further contends that the IJ and BIA erred by requiring corroborating evidence. An asylum applicant's testimony standing alone *may* be sufficient to meet her burden without corroboration, but *only if* the trier of fact is satisfied that the testimony is credible, persuasive, and specific. 8 U.S.C. § 1158(b)(1)(B)(ii). Here, the BIA and the IJ determined that Chen's testimony is not credible or sufficiently detailed, and therefore Chen would have needed to corroborate her testimony in order to meet her burden. Even if Chen's testimony were found

credible, the permissive language of the statute employed by use of the term "may" indicates that even "credible testimony may not always satisfy the burden of proof." *Diallo v. INS*, 232 F.3d 279, 286 (2nd Cir. 2000).

Immigration judges typically require corroborating evidence "when the applicant has submitted little or no evidence to corroborate his testimony," and "where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim." *Abdurakhmanov v. Holder*, 735 F.3d 341, 347 (6th Cir. 2012) (quoting *Lin v. Holder*, 565 F.3d 971, 977 (6th Cir. 2009)). Whenever the trier of fact determines that corroboration is necessary, "such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1229a(c)(4)(B). This Court is "bound by the REAL ID Act of 2005 and may not reverse an agency finding as to the availability of corroborating evidence unless the Court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." *Urbina-Mejia v. Holder*, 597 F.3d 360, 367 (6th Cir. 2010) (internal quotation marks omitted).

Here, the only corroboration Chen provided was a declaration from her mother, her mother's medical reports to establish why her mother wanted to practice Falun Gong, and Country Reports of the Chinese government's general treatment of Falun Gong practitioners. The IJ, however, determined that this is insufficient to establish Chen's claims and that further corroboration is necessary. Specifically, the IJ noted that Chen failed to corroborate her testimony 1) by not producing the bail receipt she had indicated was issued upon her release from the police; 2) by not providing a declaration from the aunt with whom Chen claimed to have been hiding for some time; and 3) by not producing any corroborating declarations from the

aunt and uncle who Chen claimed were present at her home when the police arrested her. Chen never provided the IJ or the BIA with any explanation as to why these materials, or other corroborating evidence, were not provided. In her appeal before this Court, Chen merely asserts that the further corroboration required by the IJ was "unreasonable and unavailable."

First, Chen strongly disagrees that a bail receipt should have been produced to the IJ. Whether a bail receipt was actually issued to Chen upon her release from prison, and whether Chen could reasonably have had access to such a document if it did exist, is certainly questionable. Chen correctly argues that the transcript of the hearing does not necessarily establish that such a receipt existed or was in Chen's possession, yet Chen does not actually deny its existence or explain why she did not have one. However, this was not the only corroboration that was lacking, nor was the lack of a bail receipt the sole basis for the IJ's decision. While the Court recognizes that corroborating evidence in the form of a bail receipt very well *may* be unavailable, the burden of demonstrating such unavailability is on Chen, particularly where her testimony has already been deemed not credible.

Second, concerning the declarations of allegedly involved relatives, the IJ noted that a declaration from the aunt with whom Chen claimed to have lived while hiding from the police, or declarations establishing that her aunt and uncle escaped with her parents when Chen was arrested, would have better substantiated her claims than simply her mother's statement. Additionally, Chen's mother's medical records do not substantiate Chen's claim of persecution nor do they reveal anything about Chen's own potential danger of future persecution – while they perhaps substantiate Chen's mother's reasons for practicing Falun Gong, they say nothing about Chen's own experience.[5]

---

[5] The only other corroborating evidence Chen relies on are the Country Reports she submitted concerning the Chinese government's treatment of Falun Gong practitioners, but Chen has clearly testified that she is not, nor ever

"In this circuit, supporting documentation is reasonably available 'if it is of the type that would normally be created or available in the particular country and is accessible to the alien, such as through friends, relatives, or co-workers.'" *Seo*, 533 F. App'x at 614 (quoting *Dorosh v. Ashcroft*, 398 F.3d 379, 382-84 (6th Cir. 2004)). While we doubt whether the bail receipt referenced by the IJ would meet this definition of availability, Chen does not provide any evidence as to why corroborating testimony is not reasonably available from her other family members, nor does she assert that she has lost contact with all involved family members. Thus, nothing in the record, and no part of Chen's argument on appeal, "compels" the conclusion that additional corroborating evidence is unavailable. *See* 8 U.S.C. § 1252(b)(4)(D).

In summary, both the Board and the IJ considered the totality of the circumstances and provided the reasons for their adverse credibility determination using the factors set forth in 8 U.S.C. § 1158(b)(1)(iii). In light of that determination, it was reasonable for the IJ to expect corroborating evidence, which Chen has not adequately established is unavailable. *See, e.g., Hachem v. Holder*, 656 F.3d 430, 434-45 (6th Cir. 2011) (affirming IJ's adverse credibility determination when IJ considered totality of circumstances and petitioner failed to provide reasonably available corroborating evidence). Given the adverse credibility determination, Chen cannot establish a reasonable fear of persecution. Because the "clear probability" standard applicable in cases concerning withholding of removal is a more stringent standard than the "well-founded fear of persecution" requirement for asylum cases, "an applicant who fails to establish a well-founded fear of persecution for purposes of establishing asylum is necessarily ineligible for withholding of removal." *Zhao*, 569 F.3d at 246 n.10 (citing *Lumaj v. Gonzales*, 462 F.3d 574, 578 (6th Cir. 2006)); *see also Hachem*, 656 F.3d at 435 ("Because [petitioner] was

---

has been, a practitioner of Falun Gong, so it is difficult to see how the Country Reports support a reasonable fear of future persecution.

found not credible, he failed to present adequate and credible evidence that he was subject to persecution or has a well-founded fear of future persecution so that he may be entitled to asylum relief."). Accordingly, the adverse credibility finding, which we uphold, precludes Chen from meeting her burden on her claims for both asylum and withholding of removal.

## C

Finally, Chen challenges the IJ's decision that she failed to establish either past persecution or a well-founded fear of persecution such that she could seek protection under the Convention Against Torture. The adverse credibility finding, however, defeats this claim as well. An applicant seeking eligibility for protection under the Convention Against Torture must establish that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Singh v. Ashcroft*, 398 F.3d 396, 404 (6th Cir. 2005) (quoting 8 C.F.R. § 208.16(c)(2)). Torture is "an extreme form of cruel and inhuman treatment," 8 C.F.R. § 208.18(a)(2), and is "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted" as a means of intimidating, punishing, or coercing on the part of a public official or other person acting in that capacity. 8 C.F.R. § 208.18(a)(1). Thus, to obtain protection under the CAT requires an even greater showing on the part of an applicant than is required for asylum and withholding of removal.

As explained above, an adverse credibility finding "is fatal to all three of [Chen's] claims for relief," *El-Moussa*, 569 F.3d at 256, because such a finding "precludes an applicant from demonstrating either the well-founded fear of future persecution necessary to establish eligibility for asylum, or the 'clear probability' of future persecution necessary" for withholding of removal. *Seo*, 533 F. App'x at 615 (quoting *El-Moussa*, 569 F.3d at 267). When an applicant fails to satisfy "the threshold showing of credibility to warrant withholding of removal. . . , it

logically follows that he cannot demonstrate that he is entitled to relief under the CAT." *Zhao*, 569 F.3d at 249. Because the IJ properly determined that Chen did not present credible testimony, Chen cannot establish that she reasonably fears torture or other persecution upon return to China and thus cannot make the necessary showing to obtain protection under the CAT as well. *See, e.g., Chagnaa v. Holder*, 430 F. App'x 508, 514 (6th Cir. 2011) (denying petitioner's CAT claim because she did not present independent evidence apart from her testimony that was found not credible); *Masiko*, 2014 WL 1424497, at *5 (finding that without credible testimony supporting his story, petitioner could not establish his claims for asylum, withholding of removal, or protection under CAT).

Moreover, even apart from the adverse credibility finding, Chen still fails to demonstrate a clear probability of future persecution based on her arguments on appeal. Chen's brief primarily argues that she has demonstrated a fear of future persecution "on account of her practice of Falun Gong" and because "she is a Falun Gong practitioner," and she also asserts that she has "provided sufficient evidence regarding her Falun Gong activities in the United States." Presumably, Chen then relies on the information provided concerning the Chinese government's poor treatment of Falun Gong practitioners. However, the transcript of the hearing before the immigration judge, as well as Chen's asylum application, show that Chen specifically testified that she is ***not*** a Falun Gong practitioner, and that she has never practiced Falun Gong either in China or in the United States. Thus, the record does not support her arguments concerning her fear of persecution.

## III

As this Court explains, "[a]pplicants for asylum, withholding of removal, and protection under the torture convention have an affirmative duty to demonstrate entitlement to each form of

relief." *El-Moussa*, 569 F.3d at 257. For each of Chen's claims, the IJ and the BIA found that she does not meet this burden, primarily because Chen's testimony was deemed not credible, and such findings are supported by substantial evidence. Accordingly, "the adverse credibility finding thus provides an alternative ground for upholding the denial of asylum, and a primary ground for denying [Chen's] other claims," since a lack of credible testimony prevents her from meeting any of the required burdens of proof. *Id.* For these reasons, the petition for relief is **DENIED.**