*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0420p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ILIR SHKABARI; ORJETA SHKABARI; KLIDIS
SHKABARI,

*Petitioners,*

No. 04-3124

*v.*

ALBERTO GONZALES, Attorney General,

*Respondent.*

On Petition for Review of an Order
of the Board of Immigration Appeals.
Nos. A79 290 135; A79 290 136; A79 290 137.

Argued: August 9, 2005

Decided and Filed: September 8, 2005[*]

Before: BOGGS, Chief Judge; SUTTON, Circuit Judge; and RICE, District Judge.[**]

_____

## COUNSEL

**ARGUED:** Carl M. Weideman III, WEIDEMAN & WEIDEMAN, Grosse Pointe Woods, Michigan, for Petitioners. Jennifer J. Keeney, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Carl M. Weideman III, WEIDEMAN & WEIDEMAN, Grosse Pointe Woods, Michigan, for Petitioners. Jennifer J. Keeney, Emily A. Radford, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

## OPINION

_____

BOGGS, Chief Judge. Petitioners are a family of three from Albania. They seek this court's review of the denial by the Board of Immigration Appeals of their applications for asylum and associated relief. Because the Immigration Judge had substantial evidence to support his conclusion that petitioners do not qualify as refugees, we deny the petition for review.

_____

[*] This decision was originally issued as an "unpublished decision" filed on September 8, 2005. On October 17, 2005, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable Walter Herbert Rice, United States District Judge for the Southern District of Ohio, sitting by designation.

**I**

Ilir and Orjeta Shkabari are a married couple.  Both they and their son, Klidis, left Shkoder, Albania in October 29, 2000 to come to this country, where they arrived on November 3, 2000 after travelling through Montenegro and Italy.  Mr. Shkabari claims to have been a member of the Democratic Party since 1991.  His wife claims to have joined in 1994.  Both allege that they were persecuted because of their political opinions in Albania.

Mr. Shkabari's account of persecution begins even before he joined the Democratic Party.  In December 1990, he participated in demonstrations against the communist regime.  After one of these rallies, he was beaten by police.  Mr. Shkabari joined the Democratic Party soon thereafter.  Following the communist regime's collapse, the Democratic Party came to power in 1992 and remained the dominant party until it lost the 1997 election.  Despite his party being in power, however, lead petitioner reports being harangued and threatened on the street for his association with the party.

According to petitioners, matters worsened in 1997.  Both Mr. and Mrs. Shkabari were beaten as they approached the polling station to vote in the election, which the Socialist Party ultimately won.  Mr. Shkabari asserted that he was unable to visit the hospital because the Socialists controlled everything in the city.  However, Mrs. Shkabari went to the hospital, in part because she was less well-known than her husband.  After he participated in rallies against the new government, Mr. Shkabari claims he was arrested. According to his testimony, he was beaten, interrogated, and threatened by the police.  They also allegedly poured scalding hot water on his body and shoulder.  Again, petitioner asserts, he was unable to go to the hospital.  Mr. Shkabari testified that he received medical attention at home instead.

Following the death of a Democratic Party leader in 1998, Mr. Shkabari took part in demonstrations against the Socialist government.  Because of his involvement, he claims, he was forced to report to the police station three times a month.  When he did so, he would be beaten and threatened.

Local elections were held in Shkoder on October 1, 2000.  Mr. and Mrs. Shkabari went to the polling place with their son.  As Mr. Shkabari approached the building, he claims someone knocked his son out of his arms.  He alleges that the individual then shot him in the leg.  Because he continued to fear the hospital, Mr. Shkabari was treated at home.

Mr. and Mrs. Shkabari appeared before an Immigration Judge ("IJ") with the assistance of counsel and a translator.  They entered into evidence numerous documents from the Democratic Party, which purported to show that they were members of the party and chronicled the above-described events. Following the hearing, the IJ issued an oral opinion in which he denied petitioners any relief on the basis that he did not find Mr. Shkabari's testimony credible and did not believe Mrs. Shkabari had met her burden of proof.  They appealed to the Board of Immigration Appeals ("BIA"), which affirmed without opinion.  Petitioners have timely appealed to this court.

## II

Petitioners argue that the IJ erred in finding them not credible and, thus, unable to establish a well-founded fear of persecution.[1] To be eligible for asylum, an applicant must first prove that he qualifies as a refugee. *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003). In this case, the IJ and the BIA determined that the Shkabaris were ineligible for asylum because they did not qualify as refugees. A refugee is an alien who is "unable or unwilling to return to . . . [his] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Where, as here, the BIA affirms the IJ's decision without opinion, we review the IJ's decision directly. *Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003). In this case, the IJ denied petitioners relief because he concluded Mr. Shkabari was not credible and Mrs. Shkabari had failed to meet her burden of proof. For the following reasons, we affirm.

## A

Before turning to the substance of the IJ's findings, we note that our task is complicated by a seemingly contradictory statement in the IJ's opinion regarding his evaluation of petitioner's corroborating documentation. Longstanding principles concerning judicial review of administrative action require that we assess the administrative agency's decision "solely by the grounds invoked by the agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Thus, a reviewing court will not "guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive." *Id.* at 197. An agency must therefore set forth its reasoning "with such clarity as to be understandable." *Id.* at 196. However, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989), *cited in Kobetic v. Comm'r of Soc. Sec.*, 114 Fed. App'x 171, 173 (6th Cir. 2004) ("When 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'") (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)).

The pursuit of perfection is particularly unwise in the immigration context, where we frequently review oral decisions given shortly after the conclusion of the hearing. *See Guchshenkov v. Ashcroft*, 366 F.3d 554, 561-62 (7th Cir. 2004) (Evans, J., concurring) (discussing conditions under which IJs conduct hearings). While this context is no excuse for patently inadequate reasoning, *see Recinos de Leon v. Gonzales*, 400 F.3d 1185, 1193-94 (9th Cir. 2005) (acknowledging "sobering realities" facing IJs but remanding where opinion "is extreme in its lack of a coherent explanation"), we examine the opinion to see if it speaks "'with *sufficient* particularity and clarity." *Gailius v. INS*, 147 F.3d 34, 46 (1st Cir. 1998) (emphasis added) (quoting *Hartooni v. INS*, 21 F.3d 336, 343 (9th Cir. 1994)). This court has acted accordingly, remanding a case to the BIA when it denied petitioner relief after repudiating an IJ's adverse credibility finding–thus vitiating the only rationale given below–but did not identify any other basis for its denial of relief. *Gjyzi v. Ashcroft*, 386 F.3d 710, 713-16 (6th Cir. 2004).

---

[1] The IJ also denied the Shkabaris' claims for withholding of removal and protection under the Convention Against Torture. But petitioners do not raise any argument about either of these two grounds in their brief, other than to mention withholding of removal in the statement of issues. Relief on those grounds is therefore waived. *See Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) ("It is well-established that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999)); *Girigan v. Ashcroft*, 121 Fed. App'x 577, 579 n.1 (6th Cir. 2005) (holding in identical circumstance that consideration of withholding of removal and Convention Against Torture claims waived on appeal).

In this case, the IJ reasoned "with such clarity as to be understandable." *Chenery*, 332 U.S. at 196. But that is not to say that we are not puzzled by portions of the IJ's opinion. Particularly troubling is one point where the IJ considers the documents submitted by the Shkabaris and "assumes" that the documents were "credible" because petitioners offered them in support of their application. It would then be difficult to justify any adverse credibility determination because the petitioners submitted certificates filled out by doctors and Democratic Party officials corroborating the stories of persecution related by Mr. Shkabari in some detail. *See* J.A. 156-63 (translations and originals of four certificates). However, the remainder of the IJ's opinion makes clear that he did not find the documents credible. Just a few paragraphs earlier, he found Mr. Shkabari not to be credible and "note[d] that the Government has pointed out *material inconsistencies in documents* that were offered in support of the application." J.A. 35 (emphasis added); *see also* J.A. 97 (hearing transcript) ("I also noted certain credibility issues that I had with the testimony and the documents that were submitted."). Though that sentence implies that the documents were internally inconsistent, our review of the Government's alleged inconsistencies reveals tension between petitioners' testimony and their documents, rather than inconsistencies within the documents themselves. *See* J.A. 28-30, 32. Nevertheless, review of the entire opinion makes clear that the IJ did not find Mr. Shkabari credible and that inconsistencies concerning the documents markedly detracted from their credibility. We therefore conclude that the IJ's reasoning was sufficiently clear to sustain review. We proceed to evaluate that reasoning.

**B**

We review adverse credibility determinations under the substantial evidence test. *Guang Run Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004). In the immigration context, that test has been construed to allow reversal only if "the evidence presented by [the petitioner] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). This standard has since been codified by regulations that allow this court to reverse only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Guang Run Yu,* 364 F.3d at 702-03 & n.2 ("officially adopt[ing]" substantial evidence test as articulated in § 1252(b)(4)(B)). Despite our deferential review of adverse credibility determinations, an IJ must support that determination with specific reasons. *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004). Additionally, an adverse credibility determination "must be based on issues that go to the heart of the applicant's claim." *Ibid.* Indeed, "[i]f discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility." *Ibid.* (internal quotation omitted).

In this case, the IJ found two discrepancies that fall into this category. Mr. Shkabari claimed during his asylum hearing that he had been "the chairman of the youth forum of the Democratic Party." Mr. Shkabari never mentioned such a position in his asylum application. In fact, petitioners' application states that Mrs. Shkabari was a leader of the youth forum. Petitioners produced certificates from the Democratic Party that note Mrs. Shkabari's leadership in the youth forum, but are silent as to Mr. Shkabari's role in the group. *See* J.A. 164 (Mrs. Shkabari); 154 (Mr. Shkabari). The IJ considered the failure of Mr. Shkabari to mention this position in his asylum application to be an omission. Given that the application and documents refer only to Mrs. Shkabari's involvement in the same part of the Democratic Party, it seems to be an inconsistency. However, the difference matters little in this case. While this court exercises extra care in evaluating omissions from asylum applications, *see Liti v. Gonzales*, 411 F.3d 631, 638-39 (6th Cir. 2005) (discussing difficulties asylum seekers face in providing exhaustive accounts in asylum applications), "omissions may form the basis of an adverse credibility determination, provided that they are substantially related to the asylum claim." *Id.* at 637.

Regardless of whether it is viewed as an inconsistency or omission, Mr. Shkabari's assertion in his hearing that he was the chairman of the organization greatly enhanced his claim of

persecution.  The IJ had found "it hard to believe" that Mr. Shkabari was targeted by the Socialist regime if he was just one of several thousand Democratic Party members in the area.  Holding a position in the Democratic Party helps explain why he was prominent.  This prominence would also generally serve his claim of past persecution.  As this court has recently explained, persecution cannot be based on only "indiscriminate abuse, such as physical force or violence employed against a crowd of demonstrators."  *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005).  "Instead, the applicant must establish that he or she was specifically targeted by the government for abuse . . . ."  *Ibid.*  His prominence in the Democratic Party would be a basis for finding that he had been targeted when he went to vote.  This inconsistency serves as a proper basis for the IJ's adverse credibility finding.

The adverse credibility determination is further supported by another major inconsistency.  In his testimony, Mr. Shkabari stated he was unable to go to the hospital after the police burned him with scalding water in July 1997.  He testified that, at this time, he did not feel safe going to hospitals because the Socialists controlled them.  Additionally, part of Mr. Shkabari's explanation for why his wife could go to the hospital and he could not was his notoriety as a Democratic Party spokesperson.  However, he submitted a certificate from the Democratic Party and a doctor who treated him that stated, "the familiars has taken and sent him in hospital, where is taken care by the specialist physician Hamza Vneshta but again in home."  While the language in this translation is poor, it and the similarly confusing translations in other documents are the product of his translator.  The passage implies that Mr. Shkabari was taken to the hospital.  In this context, where petitioner indicated he could not safely go to the hospital, a discrepancy as to whether he visited a hospital goes to the heart of his claim for asylum.  On appeal, petitioners ask us to interpret the certificate differently and find it to be consistent with petitioner's testimony that he was only treated at home.  While petitioner's interpretation is plausible, it takes more to overcome an adverse credibility determination.  If the IJ's contrary interpretation is not "unreasonable," it "supports [an] adverse credibility finding."  *Singh v. Ashcroft*, 398 F.3d 396, 402 (6th Cir. 2005).  Such is the case here.  The document specifically indicates that Mr. Shkabari was taken to the hospital.  It is therefore far from unreasonable for the IJ to determine that he was treated at the hospital, and possibly also at home, by the doctor.  This inconsistency then also supports the IJ's adverse credibility determination.

Though we have doubts about two other inconsistencies pointed out by the IJ, we do not believe that "any reasonable adjudicator would be compelled" to reverse the adverse credibility determination.  8 U.S.C. § 1252(b)(4)(B); *see Vasha v. Gonzales*, 410 F.3d 863, 870-72 & nn.2-4 (affirming an adverse credibility determination despite disagreeing with aspects of the IJ's rationale).  First, the IJ noted that Mr. Shkabari testified that he was hurt above the right eye when he was attacked in June 1997 but that his asylum application made no reference to that injury.  When asked about this omission on cross-examination, Mr. Shkabari answered, "I have written down in my application that . . . I has, I been beaten.  And since I have mentioned that, everyone knows that if you have beaten so badly, you have marks because of those beatings."  This explanation actually encapsulates our court's approach to omissions from asylum applications, which rejects requiring asylum seekers to provide "exhaustive, detailed list" of their encounters of persecution in an asylum application.  *Liti*, 411 F.3d at 638.  A hearing is intended to allow an asylum seeker to elaborate on the claims made in his application.  *Id.* at 639.  That is exactly what Mr. Shkabari did in this instance.

Second, we see little relevance in whether Mr. Shkabari was burned on the right shoulder, as he testified to at the hearing, or the left shoulder, which his documents and asylum testimony indicate.  When asked to explain the contradiction, Mr. Shkabari indicated that because of where the burns are located on his back, he cannot "determine exactly" what side they are on.  The IJ also notes that petitioner offered to show his back.  This situation is thus similar to that analyzed by this court in *Mece v. Gonzales*, where the petitioner presented confusing evidence regarding an injury

to his arm or shoulder but showed the IJ the injured area. 415 F.3d 562, 569 (6th Cir. 2005). We thus discredited the IJ's adverse credibility findings as to this injury because he had been able to see the injury "with his own eyes." *Id.* at 578. While in this case, the IJ did not see the injury, Mr. Shkabari's reasonable explanation of the inconsistency coupled with his willingness to cure any confusion causes us to doubt the probative value of any inconsistent testimony about the location of his burn scars. However, despite these errors on the part of the IJ, the previously described inconsistencies go to the heart of Mr. Shkabari's claim for asylum. While we have doubts about some aspects of the IJ's opinion, we do not believe that the evidence compels a contrary result.

### C

The IJ also found that Mrs. Shkabari had failed to meet her burden of proof. This court has held that even when an applicant's credibility has not been questioned, the failure to provide reasonably available corroborating evidence "'can lead to a finding that an applicant has failed to meet her burden of proof.'" *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004) (quoting *In re S-M-J-*, 21 I. & N. Dec. 722, 726 (BIA 1997). The IJ made no reference to Mrs. Shkabari's credibility, but he found that she could have obtained documents confirming her hospital visit after being beaten in June 1997.

Though the Real ID Act has altered our standard of review,[2] *see Zheng v. Gonzales*, 417 F.3d 379, 383 n.2 (3d Cir. 2005), we affirm the IJ's determination under any standard. Mrs. Shkabari did not provide any documents corroborating her hospital visit following the June 1997 attack. She explained that she had been unable to get these documents because the doctor had not been in Albania when she and their husband had their documents sent to them from Albania. The IJ, however, correctly questioned why she had been unable, in the intervening several months, to get medical records from the doctor or at least seek medical evidence from doctors in this country. Even if the doctor was still unavailable, Mrs. Shkabari did not present any evidence in the forms of letters or envelopes that she had tried to retrieve her files in the intervening period. We agree with the IJ that evidence either from Albania or this country addressing her medical treatment was readily available. *Cf. Liti*, 411 F.3d at 640.

### III

On the whole, then, though the IJ's opinion could have been clearer, we find little fault with his analysis. Mr. Shkabari's testimony and documents contain important discrepancies relating to his account of persecution that are sufficient to sustain an adverse credibility determination. Even assuming that the faults in her husband's claim have no bearing on her asylum claim, the IJ also correctly found that Mrs. Shkabari had failed to meet her burden of proof. For these reasons, we DENY the petition for review.

---

[2]A provision of the Real ID Act amends 8 U.S.C. § 1252(b)(4) to include that "[n]o court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." Real ID Act of 2005, Pub.L. No. 109-13, § 101(e), 119 Stat. 231, 305 (2005). This provision applies even to petitions, such as this one, where the BIA acted prior to the enactment of the legislation. *See id.* at § 101(h)(3), 119 Stat. at 305-06.