NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0501n.06

Case No. 14-4122

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jul 13, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| GUADALUPE ROSALES-GONZALEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| LORETTA E. LYNCH, U.S. Attorney | ) | APPEALS |
| General, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

O P I N I O N

BEFORE: CLAY and McKEAGUE, Circuit Judges; BERTELSMAN, District Judge.[*]

McKEAGUE, Circuit Judge. The Attorney General wants to deport Guadalupe Rosales-Gonzalez, a native and citizen of Mexico, because she illegally entered the United States. Guadalupe wants to stay here, explaining to various immigration officials that she will be persecuted and tortured if sent back to Mexico. Two sets of executive officials determined that her story was not credible—a finding that necessarily means she will be deported. Guadalupe now asks us to review those determinations. But because we owe much deference to the

---

[*]The Honorable William O. Betelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Executive on immigration decisions, and because substantial evidence supports its adverse-credibility determinations, we deny Guadalupe's petition for review.

I

Guadalupe grew up in Mexico. Her father served as the "mayor" of her hometown, but that job was apparently more trouble than it was worth. Guadalupe claims her father angered the criminals of the town by strictly enforcing the laws, causing them to threaten her family. One time, her story goes, the criminals banded together in front of her house as part of an "angry mob intent on doing harm" to her family. Pet'r Br. 3–4. The police responded, but the mob had already disbanded. Other threats, all empty, continued throughout the years. Possibly because of the threats (or possibly to stay with her boyfriend), Guadalupe illegally entered the United States several years after the angry-mob incident. She eventually moved to Ohio.

Guadalupe flew under the radar for six years after her illegal entry. But she was arrested for petty theft in 2010, and the United States, now aware of her illegal status, sought to deport her. She conceded that the United States could do so. But she argued that it shouldn't, because her family in Mexico is threatened. Of the several ways to obtain protection from deportation, she conceded that one—asylum—was off the table (because she sought it too late). Pet'r Br. 18 n.3. Other routes included (A) withholding from removal and (B) protection under the Convention Against Torture. To avoid deportation under these routes, she had to demonstrate that, if sent back to Mexico, either (A) her "life or freedom would be threatened" because of a protected trait (like her political beliefs), 8 U.S.C. § 1231(b)(3)(A); or (B) she would "more likely than not" suffer torture, 8 C.F.R. § 208.16(c)(2).

She began her quest for this protection before an executive official—an immigration judge. But before the judge could review Guadalupe's claims on the merits, she had to

"determine whether [Guadalupe] [was] credible; [for] an application deemed incredible will not be reviewed on the merits." *Slyusar v. Holder*, 740 F.3d 1068, 1074 (6th Cir. 2014). The judge found Guadalupe incredible, which "necessarily dispose[d]" of her merits-arguments. *Id.* The judge went on to explain that even if Guadalupe was credible, her claims would fail on the merits. The Board of Immigration Appeals, the next and final executive agency to hear her claims, affirmed based solely on the adverse-credibility finding; it did not opine on the merits.

II

Guadalupe now asks us to review these executive-branch decisions. Because we owe substantial deference to that branch in making immigration decisions, we review its "credibility determination[s] under the deferential 'substantial evidence' standard." *El-Moussa v. Holder*, 569 F.3d 250, 255 (6th Cir. 2009). It's not enough that we would have decided the credibility determination differently in the first instance. Rather, such "determinations are conclusive unless [a] reasonable adjudicator would be *compelled* to make a contrary conclusion." *Slyusar*, 740 F.3d at 1073 (emphasis added). Accordingly, Guadalupe must make the difficult showing that the record *compels* the conclusion that she was credible. She cannot do so here.

A

Substantial evidence supports the Executive's adverse-credibility finding. To start, inconsistences in the petitioner's story—whether internal or based on reference to other record evidence—matter greatly to the Executive in making its credibility determinations. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). And Guadalupe's story contains several inconsistencies, including:

- She testified that she had four brothers, but she listed only one on her asylum application.

- She testified that her father's mayoral career ended by 2009, but she wrote that he served from 2009 to 2011.

3

- She testified that her father recently ran for office, but she wrote that he was too scared to run for office.

- She testified that her family was being threatened by specific cartels, but her father wrote that he does not know who is threatening them.

These inconsistencies aren't major ones, to be sure. But they don't need to go "to the heart of the [petitioner]'s claim" to support an adverse-credibility finding. 8 U.S.C. § 1158(b)(1)(B)(iii). Nor do they need to be "beyond debate." *El-Moussa*, 569 F.3d at 255. Under our deferential review, they suffice to support the immigration judge's adverse-credibility determination.

What's more, three additional red flags—going to "the inherent plausibility of" Guadalupe's story, 8 U.S.C. § 1158(b)(1)(B)(iii)—support the Executive's adverse-credibility determination. *First*, Guadalupe's self-proclaimed most vivid and primary threat was the angry-mob incident. Yet her father's, mother's, and brother's letters do not so much as mention it—making Guadalupe's story less plausible. *Second*, Guadalupe's father omits another vivid incident from Guadalupe's story, this one involving threats to her father's avocado business. Again, one would think that her father—the one allegedly being threatened—would at least *reference* these very specific threats. But no. And *third*, one would also expect that if Guadalupe thought she was on the verge of being sent back to a country where she was going to be *tortured*, she would provide all the reasonably available evidence to avoid deportation. But, as the Board noted, she didn't do that—failing to provide, for example, a statement from her United States citizen brother because she "didn't think [of] that." Administrative Record (AR) at 159. These three red flags further undercut Guadalupe's credibility and thus further support the Executive's adverse-credibility finding. Substantial evidence supports its decision.

B

Guadalupe sees it differently. She claims that what the Executive called "inconsistencies" are not actually *inconsistencies* at all—either because she can explain how the differing accounts are in fact consistent, or because she can fill in parts of the story that were omitted. Pet'r Br. 22–29. But this line of argument suffers at least four problems.

*First*, contrary to Guadalupe's argument, "omissions may form the basis of an adverse credibility determination, provided that they are substantially related to the [petitioner's] claim." *Liti v. Gonzales*, 411 F.3d 631, 637 (6th Cir. 2005). The omissions here—such as her entire family failing to mention the angry-mob incident—go to the heart of Guadalupe's claim, and thus undercut her credibility. *See id.*

*Second*, the inconsistencies on which the Executive relies need not be "beyond debate." *El-Moussa*, 569 F.3d at 255; *see Shkabari v. Gonzales*, 427 F.3d 324, 330 (6th Cir. 2005). So while it may not be "beyond debate" that testifying about four brothers but only listing one is *inconsistent*, the Executive can still fairly base its credibility determination on that evidence.

*Third*, and in any event, inconsistencies are not the be-all and end-all of credibility determinations. Thus, even assuming Guadalupe can make consistent these "inconsistencies," the Executive can still question the "inherent plausibility" of her story—another factor to consider in a credibility determination, *see* 8 U.S.C. § 1158(b)(1)(B)(iii)—using the same evidence. To take one example: Even if Guadalupe can explain why her father running for office despite being scared to do so is not *inconsistent*, her explanation justifiably allows the Executive to question her credibility—*i.e.*, her "demeanor, candor, or responsiveness," § 1158(b)(1)(B)(iii). *See* AR at 155–56. To take three more examples, look at the red flags we

5

identified above:  While they may not be *inconsistencies* under Guadalupe's definition, they still support the Executive's adverse-credibility finding.

And *fourth*, some of the inconsistencies cannot be classified as anything but that: inconsistencies.  For example, her father's mayoral career either ended by 2009, or it didn't. Pet'r Br. 23 (conceding this inconsistency).  And, as Guadalupe recognizes, "any inconsistency may be the basis of an adverse credibility finding."  Pet'r Br. 24; *see Abdurakhmanov v. Holder*, 735 F.3d 341, 347 (6th Cir. 2012).  There are enough true, important inconsistencies and omissions to support the Executive's adverse-credibility finding on this record.

* * *

These inconsistencies and the other evidence that undercuts Guadalupe's credibility sufficiently support the Executive's decision.  Because the record does not compel a different credibility determination, we need not discuss Guadalupe's merits-arguments, made throughout the rest of her brief, Pet'r Br. 17–21, 29–37.  *See Slyusar*, 740 F.3d at 1074.

For these reasons, we deny the petition for review.