**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0430n.06

**No. 16-4326**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 21, 2017
DEBORAH S. HUNT, Clerk

EDITH MORENO,

        Petitioner,

v.

JEFFERSON B. SESSIONS, III,
Attorney General,

        Respondent.

ON PETITION FOR REVIEW OF A
FINAL ORDER OF THE BOARD OF
IMMIGRATION APPEALS

---

BEFORE:    SILER, CLAY, and WHITE, Circuit Judges.

**CLAY, Circuit Judge.** Edith Espinal Moreno seeks review of an October 28, 2016 Board of Immigration Appeals ("BIA") decision dismissing her appeal of an Immigration Judge's ("IJ") March 16, 2015 decision denying her applications for asylum, 8 U.S.C. § 1158; withholding of removal, 8 U.S.C. § 1231(b)(3); and protection under the Convention Against Torture ("CAT"), 8 C.F.R. § 208.16. Specifically, Moreno challenges the agency's adverse credibility determination. Because the agency's decision is supported by substantial evidence, we **DENY** the petition for review.

## BACKGROUND

Moreno was born in Michoacán, Mexico. She entered the United States in 1995 at the age of 17 with her father and resided in Ohio for two years, after which she returned to Mexico. Moreno spent three years in Mexico until she again entered the United States illegally in 2000.

After living in the United States for nine years, the Department of Homeland Security ("DHS") instituted removal proceedings against Moreno, who opted for voluntary departure. On September 30, 2013, Moreno again attempted to reenter the United States, whereby she was apprehended by authorities. DHS issued a Notice to Appear on October 1, 2013, charging Moreno with removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien not in possession of a valid entry document. Moreno appeared before an immigration judge on March 19, 2014, and conceded through counsel that she was removable. Instead of contesting her removability, she applied for asylum, the withholding of removal, and CAT protection.

**Immigration Court Proceedings**

On September 18, 2014, Moreno appeared before the IJ. She testified in support of her application for immigration relief. Three witnesses, Norma Hernandez (a friend), Manuel Gonzalez (Moreno's husband), and Brandow Espinal (Moreno's sixteen-year old son), testified on behalf of Moreno. The IJ also considered documentary evidence, including Moreno's Form I-589 application.

In her asylum application, Moreno stated that she feared kidnapping, torture, and harm by the Knights Templar or La Familia Michoacán —two gangs operating in Michoacán. She stated that the gangs' reasons for targeting her were gender motivated; and alternatively, because they desired to extract money from her. In support of that assertion, Moreno stated that beginning in 2011, she started receiving telephone solicitations from unknown individuals. Each time, the caller claimed that her children were involved in an accident and in exchange for offering medical relief, the individuals demanded money. Moreno also described escalating violence against females in Michoacán, referring briefly to two cases in which girls were raped and murdered.

At Moreno's September 18, 2014 merits hearing, she testified in support of the claims in her asylum application. Some of her testimony diverged significantly from her written application. Moreno testified that she was twice sexually assaulted by her step-brother Roberto. The first incident occurred when Moreno was just eight years old. Allegedly, Roberto assaulted both Moreno and her sister. Moreno never disclosed the incident to authorities, but purportedly informed her biological mother of the episode. Moreno stated that Roberto sexually assaulted her again when she first arrived in the United States at the age of seventeen. Purportedly, Roberto threatened to kill Moreno if she informed anyone of the sexual abuse. According to Moreno, Roberto was deported for selling drugs and currently resides in Michoacan. She alleges that Roberto would seek her out if she was forced to return to Mexico, although she was equivocal on the reason why when questioned further. No corroborating evidence was presented to validate Moreno's account of the sexual assaults.

Moreno also testified regarding gang violence against women in Michoacán, Mexico. She stated that it is widely known in her community that the authorities cannot or will not prevent gang violence. To support this assertion, Moreno testified about an eight-year old girl who was raped by members of Familia Michoacán. No members were prosecuted for the crime. Additionally, Moreno referenced other crimes against women, including Americans, which occurred in Michoacán. Moreno further asserted that she would likely be targeted in Michoacán because of her association with the United States. To illustrate her point, Moreno testified that in 2009, Mexican authorities noticed that Moreno's vehicle had a United States license plate and rigorously questioned her because of it. However, at no point did Moreno allege that she personally was a victim of gang violence or violence at the hands of Mexican law enforcement.

When questioned about the possibility of relocating to a different part of Mexico, Moreno explained that this was not feasible because her accent identifies her as being from Michoacán. According to Moreno, individuals from Michoacán were regularly targeted in other parts of Mexico because they are perceived as gang members. To substantiate her claim, Moreno testified that based on news reports, a group of people from Michoacán had been killed in Acapulco. She also stated that an employee at the Ohio Bureau of Motor Vehicles once asked her husband, who is also from Michoacán, if he was a gang member.

Finally, Moreno testified that she has been a political activist and has been involved in protests over the sale of Mexican oil and immigration reform in the United States. As a by-product of her activism, she, along with her children, made numerous appearances on television. In one such interview, she recounted an incident involving her husband and children, who allegedly witnessed a kidnapping conducted by the Knights Templar gang. Moreno expressed fear that the gang would retaliate against her for disclosing the episode. And in any event, Moreno worried that her children's appearances on television identified them as Americans and placed them at higher risk of kidnapping because of the presumption that individuals with ties to the United States possess greater financial resources.

**Immigration Judge's Decision**

On March 16, 2015, the IJ denied Moreno's application for asylum, withholding of removal, and CAT protection. Specifically, the IJ found Moreno not credible.[1] The IJ cited numerous omissions from Moreno's written application that she later testified to at her merits hearing. Most significantly, the IJ highlighted Moreno's omission of the sexual assault from her asylum application. The IJ also noted the lack of corroborating evidence of the sexual assault,

---

[1] Similarly, the IJ found Moreno's husband to not be credible. The IJ found Espinal's testimony credible but of little substantive value. And the IJ found Hernandez credible, but discounted her testimony because it was not based on personal knowledge.

when such evidence should have been readily available, and held this against Moreno. Finally, the IJ stated that she became evasive when asked to elaborate upon portions of her narrative, including her fear of Roberto tracking her down.

Further, the IJ found certain testimony presented by Moreno to be internally inconsistent. With respect to the purported phone calls that Moreno received, the IJ concluded that her testimony fluctuated repeatedly about the number of phone calls she received and when those phone calls occurred. Finally, the IJ also determined that several statements that Moreno made were implausible. Such statements included her testimony concerning fear of harm merely because she was from Michoacán. Moreno stated that individuals from Michoacán were commonly killed because people associated them with various gangs. The IJ found this statement incredible in light of the insubstantial evidence supporting this dramatic assertion.

Because of the adverse credibility determination, the IJ concluded that Moreno failed to carry her burden of proof in order to establish the requisite elements of an asylum claim. In rejecting her testimony, the IJ determined that she did not express a credible fear of persecution. Furthermore, the IJ decided that Moreno failed to demonstrate any nexus between her fear of persecution and her status as a member of a protected social group. Moreno claimed membership in three protected groups: (1) individuals from Michoacán; (2) Mexican parents of children with United States citizenship; and (3) women and girls. The IJ found no evidence in the record to support violence committed against her as a consequence of the first two groups and concluded that the third group was not a cognizable social group as a matter of law. The IJ also denied her application for removal and denied her application for CAT protection.

**BIA Decision**

After Moreno appealed, the BIA affirmed the IJ's adverse credibility determination and dismissed her appeal on October 28, 2016 in a separate writing. The BIA agreed with the IJ that Moreno omitted significant aspects of her claim from her written asylum application, failed to provide evidence to corroborate her testimony, made numerous implausible statements, and insufficiently explained her claim of sexual abuse. Moreno filed a petition to review the IJ's decision.

## DISCUSSION

### I. Standard of Review

When this Court reviews a removal order denying asylum, withholding of removal, or CAT protection, the factual findings of the IJ and the BIA—including adverse credibility determinations—are reviewed for "substantial evidence." *Marouf v. Lynch*, 811 F.3d 174, 180 (6th Cir. 2016). This is a "deferential standard: [a] reviewing court should not reverse simply because it is convinced that it would have decided the case differently." *Marikasi v. Lynch*, 840 F.3d 281, 287 (6th Cir. 2016) (internal quotations omitted). Rather, findings of fact, including adverse credibility determinations, must be upheld "unless any reasonable adjudicator would be *compelled to conclude* to the contrary." 8 U.S.C. § 1252(b)(4)(B) (emphasis added); *Liti v. Gonzales*, 411 F.3d 631, 636 (6th Cir. 2005). Nonetheless, even though an adverse credibility determination is afforded substantial deference, "the finding must be supported by specific reasons." *Chagnaa v. Holder*, 430 F. App'x 508, 511 (6th Cir. 2011) (quoting *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004)). "[S]peculation and conjecture cannot form the basis of an adverse credibility finding." *Marouf*, 811 F.3d at 180 (internal quotations omitted). Where the BIA reviews an immigration judge's decision and issues a separate opinion, we treat it as the final agency determination. *Sanchez-Robles v. Lynch*, 808 F.3d 688, 691–92 (6th Cir. 2015). To the

extent the BIA adopts the immigration judge's reasoning, however, "this Court also reviews the immigration judge's decision." *Id.* at 692. Questions of law are reviewed *de novo*. *Mostafa v. Ashcroft*, 395 F.3d 622, 624 (6th Cir. 2005).

## II. Analysis

Aliens at risk of persecution in their home country may qualify for relief through three avenues: (1) asylum; (2) withholding of removal; and (3) CAT protection. The Attorney General has discretion to grant asylum to applicants who meet the definition of a "refugee." 8 U.S.C. § 1158(b). A "refugee" is a person "who is unable or unwilling to return to her home country because of past persecution or a 'well-founded fear' of future persecution 'on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Umana-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013) (quoting 8 U.S.C. § 1101(a)(42)). Similarly, to prevail on a petition for withholding of removal under the INA, § 1231(b)(3), an alien must demonstrate "that there is a clear probability that he will be subject to persecution" on account of "race, religion, nationality, membership in a particular social group, or political opinion." *Khalili v. Holder*, 557 F.3d 429, 435–36 (6th Cir. 2009) (quotation marks and citations omitted). "An applicant seeking withholding of removal faces a more stringent burden than what is required on a claim for asylum." *Liti*, 411 F.3d at 640. Finally, eligibility for CAT protection turns on whether an applicant can show that "it is more likely than not that he or she would be tortured if removed[.]" *Shkulaku–Purballori v. Mukasey*, 514 F.3d 499, 503 (6th Cir. 2007) (citations and internal quotation marks omitted).

Applicants bear the burden of establishing eligibility for protection under either the INA or CAT. *See Marouf*, 811 F.3d at 188. However, before determining whether the applicant meets the statutory criteria under the INA or CAT, an immigration judge must "make a threshold

determination of the alien's credibility." *Zhao v. Holder*, 569 F.3d 238, 243 (6th Cir. 2009) (citing *In re O–D–*, 21 I & N Dec. 1079 (BIA 1998)). This is so because an adverse credibility finding "precludes an applicant from demonstrating either the well-founded fear of future persecution necessary to establish eligibility for asylum, or the 'clear probability' of future persecution necessary for withholding of removal." *Seo v. Holder*, 533 F. App'x 605, 615 (6th Cir. 2013) (citing *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009)); *see also Zhao*, 569 F.3d at 249 (finding that an adverse credibility finding also precludes relief under CAT). Consequently, an IJ's adverse credibility finding is fatal to all three of Moreno's claims for relief. *See El-Moussa*, 569 F.3d at 256. In the instant case, the IJ found that Moreno, *inter alia*, failed to satisfy her burden of proof by credibly establishing her eligibility for relief. In this regard, the IJ noted numerous inconsistencies in the record and a lack of corroborating evidence to overcome these deficiencies. On appeal, Moreno contends that the IJ's adverse credibility determination was not supported by substantial evidence. After reviewing the record, we disagree, and find that the IJ's "on the scene credibility determination," which is entitled to "substantial leeway," is supported by substantial evidence. *Ying Chen v. Holder*, 580 F. App'x 332, 338 (6th Cir. 2014) (internal quotation marks omitted).

Because Moreno's application was filed after May 11, 2005, the standard espoused in the REAL ID Act of 2005 governs our review of this claim. *See Amir v. Gonzales*, 467 F.3d 921, 925 n.4 (6th Cir. 2006). Under the Real ID Act, credibility determinations are made by looking at the "totality of the circumstances," which takes into account all relevant factors, including:

> the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements, . . . the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether

an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii). These credibility standards apply to applications for asylum, withholding of removal, and relief under CAT. *El-Moussa*, 569 F.3d at 256. In this case, the BIA relied on the IJ's credibility determination, so we are required to affirm so long as the IJ's adverse credibility determination is supported by substantial evidence.

Primarily, the IJ rested his adverse credibility determination on the fact that Moreno omitted a number of critical details from her asylum application. Certainly there is no expectation that an application will contain every detail supporting a request for asylum. *See Kaba v. Mukasey*, 546 F.3d 741, 749 (6th Cir. 2008). As long as an asylum application provides "generalized claims upon which an applicant elaborates in his hearing, omissions of specific facts in an application will not be grounds for an adverse credibility finding." *Hydra v. Holder*, 531 F. App'x 587, 591–92 (6th Cir. 2013) (quotation marks and brackets omitted) (citing *Liti*, 411 F.3d at 639). But while this Court "exercises extra care in evaluating omissions from asylum applications . . . omissions may form the basis of an adverse credibility determination[.]" *Shkabari v. Gonzales*, 427 F.3d 324, 329 (6th Cir. 2005) (internal citations omitted). This extends to omissions from written I-598 applications that diverge from an applicant's live testimony. *Harutyunyan v. Holder*, 512 F. App'x 548, 552–53 (6th Cir. 2013) (citing *Khozhaynova v. Holder*, 641 F.3d 187, 194 (6th Cir. 2011)). An application for immigration relief "should contain at least some indication of the type of assertions that will be made in support of a claim." *Kaba*, 546 F.3d at 749–50. Consequently, when an applicant relies heavily on a particular set of alleged events at her hearing, the omission of any reference to those events from an application reasonably arouses suspicion.

The BIA identified a number of omissions and inconsistencies in Moreno's written application that she later testified to. Because even a single inconsistency supports an IJ's adverse credibility determination, we need not review each of the disputed statements to affirm. *See Marikasi v. Lynch*, 840 F.3d at 288; *Abdurakhmanov v. Holder*, 735 F.3d 341, 347 (6th Cir. 2012) (finding even under the more lenient pre-REAL ID Act standard, a single inconsistency was sufficient to support an adverse credibility determination).

The most significant omission cited by the IJ was Moreno's failure to disclose the sexual assaults in her written application for asylum. Moreno neglected to make any mention of these events prior to May 14, when her counsel mentioned them at Moreno's initial merits hearing. Moreno then testified about the sexual assaults at her September 2014 merits hearing. This omission is especially pronounced because Moreno's counsel made a number of amendments to the asylum application prior to the hearing. Critically, Moreno does not dispute that she omitted any reference to the sexual assault on her asylum application. Rather, she contends that the IJ failed to credit her reasonable explanation for the omission. She argues that given the traumatic nature of the subject matter, she should be excused for failing to include the sexual assault on her application. Because she believes this explanation to be reasonable, she claims that the IJ's rejection of her explanation was based on mere speculation that she was not testifying credibly, and therefore, is not supported by substantial evidence. To further buttress her argument, Moreno relies upon a Third Circuit case, *Fiadjoe v. Attorney General of United States*, 411 F.3d 135, 154 (3d Cir. 2005), which recognized that an individual who previously suffered a traumatic sexual assault might struggle to recall the incident accurately in an asylum hearing, and held that an adverse credibility determination based on such difficulties was not supported by substantial evidence.

10

For a number of reasons, Moreno's argument is unpersuasive. As an initial matter, we note that out-of-circuit precedent is non-binding upon this Court. But in any event, while Moreno's overarching point that victims of sexual assault may experience trouble recalling the precise details of the incident is well-taken, her specific argument, as applied to the facts of this case, presumes too much. First, *Fiadjoe* is factually distinguishable from the instant case. The petitioner in *Fiadjoe* was raped multiple times by her father, and reported as much on her asylum application. 411 F.3d at 139–40. However, the petitioner had difficulty providing a coherent narrative during her live testimony because of the "bullying nature of the [immigration judge's] question[s]" and his "extreme insensitivity" towards her. *Fiadjoe*, 411 F.3d at 155. Moreno does not allege such improprieties occurred before this Court. Second, misremembering the specifics of an incident is altogether different from omitting it entirely in an asylum application. While we can understand how Moreno could struggle to speak extemporaneously about her sexual assault, the IJ was not obliged to credit such a justification in light of her failure to present any mention of the episode in her application; especially, when the application was prepared with assistance from counsel. Third, we reiterate that Moreno bears the burden of proof in her immigration petition. *See Marouf*, 811 F.3d at 188. Moreno is not absolved from her obligation to convince the IJ she has a well-founded fear of persecution, just because the subject-matter is difficult to discuss. And just because a petitioner offers a plausible explanation for an omission that does not mean that she has sufficiently rebutted an adverse credibility determination. *See Shkabari*, 427 F.3d at 330. The IJ is free to disbelieve Moreno's explanation if the IJ's interpretation of the evidence is not unreasonable. *Id.* We only reverse if the evidence in the record compels us to do so; and no such compulsion exists in the instant case.

We find further support for the IJ's adverse credibility determination due to Moreno's failure to provide corroborating evidence of the sexual assaults. At least two other individuals possessed contemporaneous knowledge of the sexual assaults: Moreno's sister and her biological mother. In fact, Moreno's sister was herself a victim of sexual assault at the hands of Roberto. Neither individual testified or provided an affidavit to support Moreno's narrative. A failure to corroborate where it is reasonable to expect an applicant to provide corroborating evidence for certain alleged facts is sufficient to support an agency's determination that the applicant did not meet her burden of proof. *Lin v. Holder*, 565 F.3d 971, 977 (6th Cir. 2009) (citing 8 U.S.C. § 1158(b)(1)(B)(ii)). We recognize that in most instances of sexual assault, it may be difficult for victims to present corroborating evidence because the only other witness to the crime is the perpetrator and the incidents often go unreported. This case is different, however. Moreno's sister witnessed the assault. She resides in the United States, apparently close enough to Cleveland, where Moreno's hearing was held that she could have testified in person. Alternatively, Moreno could have obtained documentary evidence attesting to the sexual assault. Under the circumstances, Moreno's failure to do so adds further weight to the IJ's adverse credibility determination.[2]

Although we need not recount any other inconsistencies in the record because for purposes of our conclusion, they are unnecessary, such inconsistencies lend further credence to the IJ's adverse credibility determination. Given the significant nature of Moreno's omissions, and the numerous misstatements and contradictions in the record, all of which inform the totality of our analysis, we cannot say that a reasonable judge would be compelled to overturn the IJ's adverse credibility determination in the instant action. Accordingly, Moreno fails to satisfy her

---

[2] Moreno's husband testified that she had previously disclosed the sexual assault allegations to him, but the IJ not unreasonably discounted his testimony because it was not based on personal knowledge.

threshold showing of credibility. *See Zhao*, 569 F.3d at 249. Because credibility determinations apply equally to applications for asylum, withholding of removal, and relief under CAT, we deny her petition for review.

**CONCLUSION**

For the aforementioned reasons, we **DENY** the petition for review of the BIA's decision.