NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 19a0208n.06

Case No. 18-3624

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>

JACQUELINE LIZET NOLASCO-
GONZALEZ, aka Jacqueline Gonzalez
Nolasco; BRYAN ERNESTO GONZALEZ-
NOLASCO,

    Petitioners,

v.

WILLIAM P. BARR, Attorney General,

    Respondent.

</td><td>

)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)

</td><td>

**FILED**
Apr 30, 2019
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

</td></tr>
</table>

BEFORE: ROGERS, DONALD, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Jacqueline Nolasco-Gonzalez and her son, Bryan, petition for review of a Board of Immigration Appeals order denying their applications for asylum, withholding of removal, and relief under the Convention Against Torture. We deny their petition.

I.

When Jacqueline Nolasco-Gonzalez and her son, Bryan, fled El Salvador and illegally entered the United States, she told a border patrol agent that they were coming to "work and live."[1] A.R. 169. The border patrol agent asked her if she had any fears about returning to El Salvador.

---

[1] All names are spelled as they appear in Petitioners' brief. Jacqueline Nolasco-Gonzalez is the lead petitioner in this case; her son Bryan is a derivative petitioner.

Nolasco-Gonzalez said no. When asked if she would be harmed if she returned to El Salvador, Nolasco-Gonzalez again said no.

But later that year Nolasco-Gonzalez applied for asylum and presented a different story about repeated rapes and threats by MS-13. She said that a member of MS-13, Edwin Ismail Dimas Hernandez ("Dimas"), threatened to harm her family if she did not become his "girlfriend." A.R. 363, 501. As Dimas's "girlfriend," Nolasco-Gonzalez explained that when Dimas went to prison for killing a police officer, MS-13 forced her to visit him once a month. Each time Dimas raped her. MS-13 told her she had to continue her visits or else they would kill her mother and son. After five years, she decided to stop her visits. But this did not go over well, and MS-13 told her she had to visit Dimas or they would kill her. She chose to flee to the United States with her son instead.

After a hearing, the Immigration Judge found that Nolasco-Gonzalez was not credible and subsequently denied her application for asylum, withholding of removal, and Convention Against Torture relief. The Board of Immigration Appeals ("Board") affirmed. Nolasco-Gonzalez now petitions for review in this court, claiming the Board erred when it affirmed the Immigration Judge's denial of her application, which included an adverse credibility determination.

## II.

We review credibility determinations for substantial evidence and must accept them "unless any reasonable adjudicator would be compelled to conclude to the contrary[.]" 8 U.S.C. § 1252(b)(4)(B); *see Zhao v. Holder*, 569 F.3d 238, 247 (6th Cir. 2009). Two key inconsistencies in Nolasco-Gonzalez's asylum claim support the Immigration Judge's adverse credibility determination. First, Nolasco-Gonzalez told agents at the border that she did not have any fears about returning to El Salvador and that she did not expect to be harmed if she did so. Both of those

statements directly contradict her later account. Second, Nolasco-Gonzalez gave varying descriptions of her relationship with Dimas. At times she said that MS-13 considered her Dimas's girlfriend, that Dimas considered her his "girlfriend," and that Dimas thought that they were in a voluntary relationship. But at other times, she said Dimas knew their relationship was not voluntary and instead viewed her as his sex slave. With conflicting statements about her fear of returning to El Salvador and with inconsistencies in how she described her relationship with Dimas, the Immigration Judge (and the Board) had substantial evidence to find her not credible. *See Bi Qing Zheng v. Lynch*, 819 F.3d 287, 295 (6th Cir. 2016) (upholding adverse credibility determination when Immigration Judge relied on inconsistent statements).

Nolasco-Gonzalez says otherwise. First, Nolasco-Gonzalez argues that the Board misunderstood the Immigration Judge's credibility determination. She argues that the Immigration Judge believed her explanation for her contrary border statements and did not consider them in making his credibility determination. So she says that the Board erred when it affirmed that determination based on both Nolasco-Gonzalez's statements at the border *and* her statements about her relationship with Dimas. Yet the Immigration Judge *did* consider Nolasco-Gonzalez's border statements. The Immigration Judge merely said that he understood why such an interview at the border "might be fraught," but he did not say that he necessarily believed Nolasco-Gonzalez's current narrative. A.R. 76. In fact, in the very next paragraph, the Immigration Judge based his credibility decision on the entire record—including her border statements. Thus, the Board did not err in its understanding of the Immigration Judge's credibility decision.

Next, Nolasco-Gonzalez tries to explain away her statements at the border. She says that she did not discuss her fear of Dimas or MS-13 because the border patrol agent was "very hurried and distracted," A.R. 381, and she did not understand his Spanish. Further, she "would not have

felt comfortable admitting to a strange man about being sexually assaulted, especially with [her] son sitting next to [her.]" *Id.* Such explanations are definitely plausible. But immigration judges need not accept every plausible explanation for inconsistent statements. *See Moreno v. Sessions*, 694 F. App'x 391, 397 (6th Cir. 2017); *Matter of D-R-*, 25 I. & N. Dec. 445, 455 (BIA 2011) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)). Nor are plausible explanations enough on appeal to overcome an adverse credibility determination. *Shkabari v. Gonzales*, 427 F.3d 324, 330 (6th Cir. 2005). Instead, Nolasco-Gonzalez must show that the Immigration Judge's contrary interpretation of the evidence was unreasonable. *Id.* She cannot do this by merely pointing out an alternative plausible interpretation.

The same can be said for Nolasco-Gonzalez's arguments surrounding her statements about Dimas. Nolasco-Gonzalez would have us construe the "ambiguity" in the word "relationship" in her favor or read the word "girlfriend" with an acknowledgement that it could have been imprecisely translated. Pet'r Br. 15, 17. But even if we did so, all we would be left with is another plausible reading of Nolasco-Gonzalez's words. Two stories would emerge from the record. But when there are two plausible stories on a cold record, the substantial evidence standard demands that we uphold the Board's findings. *Shkabari*, 427 F.3d at 330; *see Anderson*, 470 U.S. at 574 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."); s*ee also Yongbo Yao v. Sessions*, 745 F. App'x 396, 398 (2d Cir. 2018) (holding that adverse credibility determination was supported by substantial evidence when Immigration Judge chose between two plausible views of the evidence); *Estrada-Martinez v. Lynch*, 809 F.3d 886, 895 n.5 (7th Cir. 2015).

This rule makes sense. Courts often consider the context of words and the appropriate meaning of ambiguous terms. As a court of appeals, this is one of our core competencies. But

that core competency is far different from determining the meaning and trustworthiness of witness testimony. The fact-finders in our judicial system, by contrast, do this all the time. It is their core competency. And here, the Immigration Judge who heard the witnesses testify is in a better position to judge those witnesses' credibility. Only the fact-finder "can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson*, 470 U.S. at 575. Indeed, the very things Nolasco-Gonzalez would have us extract from the cold record—possible ambiguities in how a word was used or possible nuances lost in translation—are the very cues from a person's statements that are often "lost on an appellate court sifting through a paper record." *Cooper v. Harris*, 137 S. Ct. 1455, 1474 (2017). For instance, if Nolasco-Gonzalez misunderstood an ambiguous statement, her demeanor or tone may have changed. Or if the translator imprecisely translated her testimony, she might have displayed signs of frustration on the stand. But with the cold record as it is, all we can do is speculate. Such speculation does not compel overturning the Board's decision. *Cf. Marouf v. Lynch*, 811 F.3d 174, 183 (6th Cir. 2016) (holding that translation errors may undermine an adverse credibility determination when there is more than speculation, i.e., both a "strong indication" of translation errors and "extensive" corroboration).

Accordingly, the Immigration Judge's adverse credibility determination is supported by substantial evidence.

## III.

Because the Immigration Judge (and the Board) found that Nolasco-Gonzalez was not credible, they held that she could not meet her burden for asylum, withholding of removal, or

Convention Against Torture relief. We review these findings also for substantial evidence. *Zhao*, 569 F.3d at 247.

We begin with Nolasco-Gonzalez's asylum claim. The Attorney General may grant asylum to an applicant who proves she is a "refugee." 8 U.S.C. § 1158(b)(1)(A). A refugee is "a person who is unable or unwilling to return to her home country because of past persecution or a well-founded fear of future persecution on account of [a protected ground]." *Umana-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013) (quoting 8 U.S.C § 1101(a)(42)) (internal quotation marks omitted). The principal evidence in the record about Nolasco-Gonzalez's persecution was her own testimony, and since she was found not credible, her testimony was insufficient to prove either past persecution or a well-founded fear of future persecution. *See Pilica v. Ashcroft*, 388 F.3d 941, 954–55 (6th Cir. 2004).

Sometimes corroborating evidence may rehabilitate non-credible testimony like Nolasco-Gonzalez's. *See Marikasi v. Lynch*, 840 F.3d 281, 289 (6th Cir. 2016). Nolasco-Gonzalez tries to do that here with two short, cursory declarations. The two declarations are from her cousin and her husband. While both reiterate Nolasco-Gonzalez's story, neither appears to be based on personal knowledge—particularly the one from her husband, who was living in the United States and thus far removed from the events that Nolasco-Gonzalez described. Accordingly, these declarations are not enough to rehabilitate Nolasco-Gonzalez's non-credible testimony and make the Immigration Judge's adverse credibility finding unreasonable. *Cf. Moreno*, 694 F. App'x at 397–98 & n.2 (stating that an Immigration Judge did not act unreasonably by discounting statements "not based on personal knowledge"). Without evidence of persecution, Nolasco-Gonzalez's asylum claim fails.

Since Nolasco-Gonzalez's asylum claim fails, she cannot meet the higher standard for withholding of removal. *Wang v. Lynch*, 824 F.3d 587, 593 (6th Cir. 2016). Similarly, if an applicant fails to satisfy the threshold showing of credibility required for withholding of removal, then she is not entitled to Convention Against Torture relief when that relief rests on the same grounds. *Zhao*, 569 F.3d at 249. Here, Nolasco-Gonzalez bases her withholding of removal and Convention Against Torture claims on the same ground: Dimas's alleged conduct. Thus, Nolasco-Gonzalez cannot meet her burden. *See Bi Qing Zheng*, 819 F.3d at 295–96.

\*     \*     \*

An Immigration Judge viewing Nolasco-Gonzalez's testimony firsthand found that she was not credible. Since the record supports the Immigration Judge's finding, we deny the petition for review.