NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0139n.06
Filed: February 20, 2007

No. 06-3183

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

YONG EN LIN,                                )
                                            )
    Petitioner,                 )
                                            )
      v.                      )          ON PETITION FOR REVIEW OF
                                            )          AN ORDER OF THE BOARD OF
ALBERTO R. GONZALES,                        )          IMMIGRATION APPEALS
                                            )
    Respondent.                 )

_____

BEFORE: MERRITT, DAUGHTREY, and GRIFFIN, Circuit Judges.

PER CURIAM.

Petitioner Yong En Lin ("Lin"), a native and citizen of China, seeks review of a final order

of removal issued against him by the Board of Immigration Appeals ("BIA") on January 10, 2006.

In its order, the BIA affirmed the decision of an Immigration Judge ("IJ") denying Lin's request for

asylum, withholding of removal, and relief under the Convention Against Torture Act ("CAT"). Lin

has timely petitioned this court for review.[1] Specifically, Lin asserts that the BIA incorrectly

affirmed the erroneous legal findings of the IJ. For the reasons set forth below, we disagree and deny

_____

[1]Lin did not raise the denial of his petition for withholding of removal or relief pursuant
to the CAT in his appellate brief, but merely argues that he has met the less stringent burden for
asylum. Accordingly, it would appear that he has abandoned the issue. *See Shkabari v.
Gonzales*, 427 F.3d 324, 327 n.1 (6th Cir. 2005); *Grider v. Abramson*, 180 F.3d 739, 750 n.14
(6th Cir. 1999).

the petition for review.

I.

Petitioner Lin is a native and citizen of the People's Republic of China. He originally entered the United States on a non-immigrant visa, but applied for asylum, withholding of removal, and relief under the CAT on December 10, 2003.[2] On June 10, 2004, following a hearing and submission of evidence, the IJ denied Lin's application. The BIA dismissed Lin's appeal of that decision on January 10, 2006, and this petition for review followed.

In Lin's initial asylum application, he indicated that, in 1949, the Chinese government took land and "houses" from his grandfather. He further stated that, in 1997, the government again took land from his family, providing "little compensation" in return. He explained that he feared detention or persecution if he were to return to China. Specifically, he feared being "maybe fined or arrested." Finally, he stated that he had been a member of the Christian Church since 2000, his family in China were practicing Christians, and his father was an accountant for a local Christian church.

The IJ held a hearing on June 10, 2004, at which Lin testified that the government took his family's land in 1997 for use as a military base and failed to provide full compensation as a return. Lin further stated that his family had unsuccessfully complained to the government about this discrepancy. He stated that his grandfather had lost all of his land during the revolution when the

_____

[2]The date stamp on Lin's initial petition is not legible. Nevertheless, the IJ stated in his June 10, 2004, opinion, that Lin "executed his application on December 10, 2003 and then subsequently filed the application with the court."

People's Republic of China was established, although on cross-examination, he testified that his family was still farming. According to Lin, his family originally owned seven to eight "mu," but following the government's seizure, they only owned two to three "mu."

Lin also testified that the village government refused to give him the requisite documentation needed to work and did not give a reason for the denial. Lin believes that it is in retaliation for his parents' complaints about the compensation for their land and their refusal to donate money for the construction of a Buddhist temple in the village. Lin stated that he is a Christian, but that the government had "confiscated [his church] . . . for the use of streets." He testified that he had witnessed two members of his church arrested and detained for less than twenty-four hours. Nevertheless, he admitted that upon release they were "fine." Based upon these actions, Lin stated that he fears persecution because of his religion.

On cross-examination, Lin testified that he left China in May 2000 and traveled to Hong Kong, Amsterdam, Suriname, and the Virgin Islands. He also noted that he possessed tourist visas for Vietnam, Malaysia, and Cambodia. He stated that these visas were procured with the help of a wealthy aunt who "had a relationship with the government," as a graduation present.

In a June 10, 2004, oral decision, the IJ denied Lin's petition for asylum, withholding of removal, and protection under the CAT. Specifically, the IJ found that Lin's petition was untimely because it was filed nearly two years after he entered the United States. Nevertheless, the IJ assumed timeliness and denied the petition on the merits, ruling that Lin "failed to sustain his burden of proof and persuasion that he was either persecuted in the past or that there is a reasonable possibility of

his persecution in the future on account of one or more of the five protected enumerated grounds should he be returned to the People's Republic of China." The IJ did not make a finding of credibility, but stated that it could "at best . . . find that [Lin] experienced certain acts of discrimination," not persecution. According to his testimony, Lin's family remained in China and were both practicing Christians and employed. The IJ also found that Lin had failed to provide reasonable corroboration of his claim, noting that Lin's cousin, with whom he lived in Ohio, did not testify. Accordingly, the IJ denied Lin's petition on all counts.

Lin appealed the IJ's decision to the BIA. On January 10, 2006, the BIA dismissed the appeal, ruling, in relevant part:

> [Lin] has failed to establish that the government's acquisition of a portion of his family's farm land in exchange for what may have been inadequate compensation, and the village officials' refusal to issue him a work certificate, amount to past persecution.

(citing *Ali v. Ashcroft*, 366 F.3d 407 (6th Cir. 2004) (stating that persecution is an extreme concept that does not include every sort of treatment that society regards as offensive)). Like the IJ, the BIA assumed timeliness, but went on to hold that Lin had not established any harm – physical or economic – that would rise to the level of "persecution" sufficient to establish his burden to obtain asylum, withholding of removal, or relief under the CAT.

Lin appeals the BIA's order denying his petition.

## II.

We review the factual findings underlying an IJ's denial of asylum with great deference and uphold them on appeal "unless any reasonable adjudicator would be compelled to conclude to the

contrary." 8 U.S.C. § 1252(b)(4)(B). To reverse, we must conclude that the evidence not only supports a contrary conclusion, but indeed compels it. *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *Klawitter v. I.N.S.*, 970 F.2d 149, 151-52 (6th Cir. 1992) (identifying the standard of review as the substantial evidence standard).

Before a request for asylum may be granted, the applicant must sustain his burdens of production and persuasion for qualification as a refugee. *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004). To meet his burden, an alien must establish either past persecution, or a well-founded fear of persecution upon return to the country of origin. *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005). The "well-founded fear of persecution" must be on account of "race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1158(b); 8 U.S.C. § 1101(a)(42)(A), and must be both subjectively genuine and objectively reasonable. *Mikhailevitch v. I.N.S.*, 146 F.3d 384, 389 (6th Cir. 1998).

"Economic deprivation constitutes persecution only when the resulting conditions are sufficiently severe." *Daneshvar v. Ashcroft*, 355 F.3d 615, 625 (6th Cir. 2004) (citing *Matter of Acosta*, 19 I & N Dec. 211, 222, 1985 WL 56042 (B.I.A. 1985) (stating that persecution can "consist of economic deprivation or restrictions so severe that they constitute a threat to an individual's life or freedom"); *see also Akhtar v. Gonzales*, 406 F.3d 399, 405 (6th Cir. 2005) (holding that the imposition of "economic disadvantage" on the Mohajirs in Pakistan, through generic discrimination of limited number of spots for Mohajirs in universities and difficulty advancing to high levels in employment, did not amount to economic deprivation rising to level of persecution that would

warrant a grant of asylum).

Here, Lin asserts that the decisions of the IJ and BIA were not supported by substantial evidence. Specifically, Lin contends that his testimony establishing that the government took away his family's land without just compensation and denied him work documentation based on his religion met his burden. Lin further argues that because there was neither contrary evidence in the record, nor a negative finding of credibility, he must be presumed credible, and, thus, he has established his burden of a "well-founded fear" of persecution. Accordingly, he requests that we grant his petition for review and reverse the decision of the BIA.

The BIA ruled that Lin "failed to establish that the government's acquisition of a portion of his family's farm land in exchange for what may have been inadequate compensation, and the village officials' refusal to issue him a work certificate, amount to past persecution." Following our review, we conclude that the record does not compel a contrary conclusion. As the BIA stated, the record does not indicate that Lin has ever been threatened, arrested, detained by the police, or physically harmed. Lin testified that his Christian family is still farming on a portion of their land in China. Further, the record does not indicate that any of the "harm" Lin suffered was a result of his or his family's religion. Although Lin insists otherwise, the record evidence did not compel the BIA to draw the inference that he was not issued a work certificate because his parents lodged a complaint regarding inadequate compensation or refused to donate money to the Buddhist temple. Indeed, in his asylum application, Lin stated that his family continues to practice Christianity and that his father serves as an accountant for the local Christian church.

In summary, after applying our deferential standard of review, we conclude that the record does not *compel* a contrary conclusion to that reached by the BIA, *see Elias-Zacarias*, 502 U.S. at 481 n.1.

III.

For the reasons stated above, we deny the petition for review.