**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0502n.06

Case No. 18-3019

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LIZHI SHI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| JEFFERSON B. SESSIONS III, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |

**FILED**
Oct 11, 2018
DEBORAH S. HUNT, Clerk

**O P I N I O N**

BEFORE: GIBBONS, SUTTON, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Lizhi Shi is a native of China and a self-professed Christian. Shi began having issues with Chinese officials when his wife gave birth in 1994, and neither he nor his wife agreed to undergo sterilization or implement birth control. Shi later converted to Christianity and subsequently had an incident when police discovered him at an "underground church" service. A year later, Shi decided to come to the United States. When he had been here for nearly half a year, Shi filed an application for asylum and withholding of removal. After numerous administrative filings, substitutions of attorneys, and a change in venue, Shi had a merits hearing in August 2016 on his application. The Immigration Judge ("IJ") denied Shi's application based on an adverse credibility determination due to inconsistencies and omissions in his testimony. The IJ also found that Shi provided insufficient corroborations and explanations of the inconsistencies and omissions. On appeal, the Board of Immigration Appeals

("BIA") found that the record sufficiently supported the IJ's credibility determination. Finding substantial evidence to support the adverse credibility finding, we **DENY** Shi's petition for review.

**I**

Shi's troubles began in his native China when his wife gave birth in October 1994. Chinese officials wanted to prevent Shi and his wife from having additional children, so they asked his wife to be sterilized or fitted with an IUD.[1] During childbirth, however, Shi's wife experienced complications, preventing the officials from performing the operation. So they asked Shi to have a vasectomy, but he refused, was possibly beaten, and went into hiding. And officials possibly confiscated his family land.

Nine years later, Shi became a Christian. His family did not convert, but they were aware of his faith. In September 2006, the police invaded an "underground church" service that Shi was attending at one of the congregation member's home. When the officers disrupted the service, they either arrested Shi and the other church members or arrested just the homeowner. They also possibly confiscated Shi's bible. In one of Shi's versions of the story, he claims officers took him to an interrogation room, said he was a member of an antigovernment cult, hit and kicked him, held him for two or three days, and forced him to sign a guarantee letter promising not to do illegal acts, participate in antigovernment gatherings, or to proselytize the "cult."

Shi came to the United States with a visitor visa on January 17, 2007. On June 6, 2007, he applied for asylum, withholding of removal, and relief under the Convention Against Torture. After over nine years of administrative processes, Shi had a hearing on his claims in August 2016.

---

[1] Because the record is inconsistent for several of the facts at issue, we are uncertain whether or how certain events transpired.

Based on inconsistencies and omissions in his asylum application, statements in other documents on the record, and testimony given during the hearing, the IJ made an adverse credibility finding and denied Shi's application. The IJ also considered the merits of Shi's claims for the sake of "administrative efficiency," holding that Shi would fail on the merits as well. The BIA found there was sufficient evidence to support the IJ's adverse credibility determination and no clear error in the IJ's analysis of the merits.

## II

### A. Jurisdiction

Shi failed to administratively exhaust the issue of whether the IJ erroneously admitted what is called an "assessment to refer"—a report written by an asylum officer summarizing Shi's statements during his asylum interview. This court lacks jurisdiction to review issues that have not been administratively exhausted. *See* 8 U.S.C. § 1252(d); *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007). A petitioner must present all reviewable issues to the BIA to properly exhaust those issues. *See Khalili v. Holder*, 557 F.3d 429, 432 (6th Cir. 2009).

Shi claims here that the assessment to refer was improperly admitted because it was not entered into evidence until the second day of his individual hearing. Shi did not exhaust this argument because he did not present it to the BIA—in fact, he did not allege *any* procedural issues with his hearing—and the BIA did not *sua sponte* consider it. [2] *See Khalili*, 557 F.3d at 433.

Despite the government's arguments to the contrary, Shi's other claims were exhausted. Although Shi's briefing regarding the IJ's credibility determination to the BIA is not carbon copied

---

[2] Although unclear, to the extent that Shi challenges the reliability of the assessment to refer, this court lacks jurisdiction over that issue as well because Shi did not present it to the BIA. Similarly, to the extent that he challenges whether he had sufficient opportunity to address the contents of the assessment to refer in his hearing, Shi did not exhaust that issue by not raising it to the BIA.

in this instant appeal, the issue was reasonably developed in the briefing and considered by the BIA. *See id.*; *Hasan v. Ashcroft*, 397 F.3d 417, 420 (6th Cir. 2005). Each particular issue Shi raises in this appeal regarding the credibility determination was raised to and considered by the BIA: (1) inconsistency regarding sterilization versus fitting of IUD; (2) being beaten by Chinese officials upon refusal to undergo sterilization; (3) confiscation of family land[3]; (4) baptism date; (5) religious status of family members; and (6) arrest and treatment by police for participation in an underground church meeting.

Accordingly, we find that these were administratively exhausted and that we have jurisdiction to proceed.

**B. Waiver**

Shi has not addressed the denial of Convention Against Torture relief in his briefing to this court and so has waived the issue. Although Shi states in his "statement of jurisdiction" that he seeks review of the denial of relief under the Convention Against Torture, he fails to provide a statement of the issue or put forth any argument for why he challenges the BIA's decision. *See* Fed. R. App. P. 28(a)(5), (8) (an appellant's brief "must contain . . . a statement of the issues presented for review" and an argument containing the "appellant's contentions and the reasons for them"). "We normally decline to consider issues not raised in the appellant's opening brief." *Bickel v. Korean Air Lines Co.*, 96 F.3d 151, 153 (6th Cir. 1996) (citation omitted); *see also Vasquez v. Holder*, 416 F. App'x 565, 568 (6th Cir. 2011); *Suarez-Valenzuela v. Holder*, 714 F.3d 241, 248 (4th Cir. 2013).

---

[3] Shi did not raise this issue in the "credibility" section of his briefing to the BIA. However, he did raise it in the "persecution" section, and the Board explicitly considered it in upholding the IJ's credibility determination.

**C. Standard of Review**

When the BIA issues a separate opinion from the IJ, as it did here, we review the BIA's decision as the final agency determination. *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007); *Patel v. Gonzales*, 470 F.3d 216, 218 (6th Cir. 2006). We review questions of law *de novo*, but grant significant deference to the BIA's factual findings, reviewing them under the "substantial evidence" standard. *Morgan*, 507 F.3d at 1057; *Khalili*, 557 F.3d at 435. Under the substantial evidence standard, factual findings, which include credibility determinations, are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Marikasi v. Lynch*, 840 F.3d 281, 287 (6th Cir. 2016) (quotation omitted); *see Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004).

**D. Applicable Law**

*1. Asylum*

The Secretary has discretion to grant asylum for any alien who qualifies as a refugee. 8 U.S.C. § 1158(b). A refugee is anyone "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

*2. Withholding of Removal Pursuant to 8 U.S.C. § 1231*

Withholding of removal is not discretionary; however, an alien's burden is more stringent than for asylum. 8 U.S.C. 1231(b)(3)(A); *see Khalili*, 557 F.3d at 435. Withholding of removal is only available if an "alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). An applicant must demonstrate "a clear probability that he will be

subject to persecution if forced to return to the country of removal." *Khalili*, 557 F.3d at 436 (citation omitted). An alien who fails to meet the "well-founded fear standard" for asylum is "necessarily ineligible for withholding of removal." *Zhao v. Holder*, 569 F.3d 238, 246 n.10 (6th Cir. 2009).

### 3. *Credibility Determinations*

For asylum and withholding of removal the IJ's credibility determination is central in the decision of whether to grant relief. Because the principal, and often only, evidence used in making these determinations is the applicant's testimony, "[a]n adverse credibility determination is fatal to claims for asylum and relief from removal, preventing such claims from being considered on their merits." *Slyusar v. Holder*, 740 F.3d 1068, 1072 (6th Cir. 2014); *see also Perlaska v. Holder*, 361 F. App'x. 655, 661 n.6 (6th Cir. 2010).

In assessing credibility for asylum, withholding of removal, or other relief from removal applications filed on or after May 11, 2005, an IJ considers the totality of the circumstances. 8 U.S.C. § 1158(b)(1)(B)(iii); *Slyusar*, 740 F.3d at 1072. The IJ may consider, among other things:

> the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements . . . whether or not under oath, . . . and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii).

### E. Inconsistencies and Omissions the BIA Identified

The BIA identified six inconsistencies or omissions between Shi's asylum application, assessment to refer, supplemental statement, and hearing testimony that it held provided substantial evidence to support the IJ's adverse credibility determination.

*1. Sterilization Versus IUD*

The BIA found that Shi was inconsistent in whether officials initially wanted to fit his wife with an IUD or to sterilize her after she gave birth. In Shi's application, assessment to refer, supplemental statement, and his hearing initially, he claimed that Chinese officials wanted to sterilize his wife after she gave birth. However, upon further questioning from the IJ at his hearing, Shi stated that they only wanted to fit her with an IUD.

*2. Being Beaten After Refusing Sterilization*

The BIA noted that Shi only sometimes said that he was beaten after refusing to be sterilized in lieu of his wife. Shi indicated in his asylum application and supplemental statement that after his wife's birth complications prevented her from being fitted with an IUD or sterilized, he was asked to undergo sterilization and was beaten upon refusal. However, he did not mention this in either his assessment to refer or during his hearing.

*3. Confiscation of Land*

The BIA observed that Shi only sometimes raised the fact that his family land was confiscated by the government. Shi failed to disclose that his family land was confiscated in his asylum application and in his assessment to refer. The IJ noted that Shi mentioned the confiscation in his supplemental statement; however, he did not claim it was due to his "opposition to [China's] family planning policies." AR. 93. The BIA misconstrued this, stating that Shi "failed to disclose the confiscation . . . on his . . . supplemental documents." AR. 4. Shi only failed to disclose the *reason* for the confiscation in his supplemental statement, not the confiscation itself.

*4. Baptism Date*

The BIA remarked that Shi gave different dates for his baptism between his assessment to refer and during his amended statement and hearing. In his assessment to refer, he claimed that he

was baptized on October 5, 2003, but in his supplemental statement and in his hearing testimony he stated he was baptized on December 25, 2003.

### 5. *Family Members' Religious Preferences*

The BIA stated that Shi was inconsistent as to whether other members of his family were Christian and whether he "spread the gospel to them." In Shi's assessment to refer, he said that both he and his wife were Christian. In his hearing testimony, however, he stated that although neither his wife nor his son were baptized, he had "spread the gospel to them." AR. 84. His daughter, who testified at the hearing and whom the IJ found credible, testified that Shi had not spread the gospel to anyone in his family and that no one else in the family was Christian.

### 6. *Events of September 2006*

The BIA found that Shi's accounts of the events of the September 2006 incident not only directly contradicted themselves, but also became enhanced over time. In Shi's asylum application he claimed that he was arrested at a home church meeting and had his bible confiscated. In his assessment to refer, Shi stated that only the homeowner was arrested, and the rest of the congregation only had to sign "guarantee letters." In his supplemental statement, Shi reversed course and claimed that he was taken to a police station, locked in a room, and interrogated. He claimed he was hit and kicked, and after being held for three days was forced to sign a guarantee letter. His hearing testimony largely tracked his supplemental statement, adding the detail that he was beaten so hard his shoulder and back were black and blue.

### F. Substantial Evidence Supported the Adverse Credibility Determination

Considered as a whole, the inconsistencies and omissions between the various sources constitute substantial evidence to support an adverse credibility determination.

It was not incorrect for the BIA and IJ to consider the baptism date and sterilization versus IUD inconsistencies. In making a credibility determination, the IJ is instructed to consider the totality of the circumstances and is permitted to consider *any* inconsistency whether or not it goes to the "heart of the applicant's claim." 8 U.S.C. § 1158 (b)(1)(B)(iii). Certain inconsistencies are either so minor or understandable that on their own they would likely not support an adverse credibility finding. *See*, *e.g.*, *Marouf v. Lynch*, 811 F.3d 174, 185 (6th Cir. 2016) ("An inability to accurately recall the date when a traumatic event occurred is not particularly probative of a witness's credibility when alleging traumatic persecution . . . ."). Even though they are minor, however, does not mean that an IJ cannot take them into account when considering the totality of the circumstances. It was not erroneous for the BIA to take them into account alongside the other inconsistencies in Shi's record.

And Shi's record contains enough inconsistencies that a reasonable adjudicator would have substantial evidence to make an adverse credibility determination. Shi directly contradicted himself when he first claimed to have been arrested in September 2006, then later stated that only the homeowner had been arrested, and then reverted to his first version. Additionally, Shi initially claimed that his wife was a Christian, but later stated that he had only "spread the gospel" to her. He was contradicted on both points by his daughter.

It is reasonable to expect that an individual will at least mention the significant events that led him to seek asylum in each of his statements. *See Shkabari v. Gonzales*, 427 F.3d 324, 329 (6th Cir. 2005). Having family land confiscated and being beaten are two such significant enough

facts. Shi did not mention the confiscation in his asylum application or assessment to refer.[4]  And Shi did not mention being beaten upon refusing to be sterilized in his assessment to refer or in his hearing.

Shi did not offer a persuasive explanation of the inconsistencies and omissions in his various statements.  When questioned at the hearing about why he omitted certain facts in his asylum application, he initially stated that it was because it was thirty pages and his attorney told him to shorten it.  Later, however, he stated that the application was originally only three to four pages.  Neither did he offer corroborating evidence that could either explain the inconsistencies or demonstrate that at least one version of what he said was accurate.  *Cf. Marouf*, 811 F.3d at 186.

Given the contradictions, the omissions, and the lack of persuasive explanation or corroboration, we find that substantial evidence supports the IJ and BIA's credibility determination; we, therefore, need not explore the merits of Shi's asylum and withholding of removal claims.  *See Slyusar*, 740 F.3d at 1072.

## III

For the foregoing reasons, we **DENY** Shi's petition for review.

---

[4] As noted above, the BIA incorrectly found that Shi did not mention the confiscation of his land in his supplemental statement.  This, however, is not so significant an error to suggest that had the BIA correctly identified the state of the record it would have made a difference in assessing the totality of the circumstances.